Commonwealth *v.* Honigman, Appellant.

Submitted December 8, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Bernard L. Segal,* with him *Needleman, Needleman, Segal & Tabb,* for appellant.

*James D. Crawford,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 14, 1970:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:
In the instant case, appellant, David Honigman, was convicted of arson and conspiracy to defraud an insurance carrier as a result of a fire which occurred at a restaurant. Honigman was not at the scene nor was he accused of actually setting the fire.

The fire was started by Norman Prussel, a professional arsonist, who sustained severe burns during the course of the blaze and died several days later. The Commonwealth's case depended primarily on the testimony of a single witness, Edward Klayman, who was a coconspirator. Klayman seriously implicated Honigman when he stated that Prussel had received the key to the premises from Honigman.

In an attempt to rebut this factual allegation, appellant sought to introduce the testimony of a Detective Matthews who had interviewed Prussel in the hospital. Prussel allegedly told Matthews at that time that he had received the keys from a man named Rosen.[1]

The trial judge, however, refused to admit this evidence which seriously contradicted Klayman's testimony.

On appeal, appellant contends that Prussel's statement was admissible and should have been received as the declaration of a coconspirator, because the conspiracy, including the fraudulent claim for insurance proceeds, had not yet ended, citing *Commonwealth v. Ott,* 154 Pa. Superior Ct. 647, 36 A. 2d 838 (1944). I cannot agree that the statement would be admissible on this theory. To be admissible, such statement or act must be made not only during the conspiracy but also in furtherance of the common design. *Commonwealth v. Ellsworth,* 409 Pa. 505, 187 A. 2d 640 (1963) ; *Krulewitch v. United States,* 336 U.S. 440, 69 S. Ct. 716 (1949). There is nothing to indicate that Prussel's statement, made in the hospital, was in furtherance of the conspiracy.

I believe, however, that from the limited record before us, Prussel's statement should have been admitted

---

[1] This testimony is on the record of a civil proceeding, *Cautin v. Safeguard Mutual Fire Ins. Co.,* No. 1745 June Term, 1967, of Phila. C.P. No. 5.

as a declaration against interest. It contained Prussel's admission that he had received the key for the premises and, therefore, clearly implicated him in the crime.

The declaration against interest exception to the hearsay rule has generally been limited to declarations against the declarant's pecuniary or proprietary interest and not his penal interest. See *Donnelly v. U.S.*, 228 U.S. 243, 33 S. Ct. 449 (1913); Wigmore, Evidence §1476, p. 281 (3d ed. 1940); 162 A.L.R. 437, and cases cited therein.

It had always been my understanding that such was the law in this Commonwealth. Surprisingly, however, no published opinion in this Commonwealth has come to my attention which has specifically enunciated the doctrine as set forth above.

The closest and most instructive opinion in this regard in Pennsylvania is *Commonwealth v. Antonini*, 165 Pa. Superior Ct. 501, 69 A. 2d 436 (1949). In *Antonini*, a decedent had prepared a written statement prior to his death which stated that he and the defendant had together participated in a criminal act. Our Court held that such evidence could not be admitted to inculpate the defendant in the crime.

In excluding such evidence our court made reference to *Donnelly v. U.S.*, supra, explaining as follows: "In Donnelly v. U.S., (supra), a defendant charged with murder offered in evidence the confession of one Joe Dick, who was deceased, that the declarant had killed the person with whose homicide the defendant was charged. The trial court rejected the offer as hearsay, stating, page 833: 'One of the exceptions to the rule excluding it [hearsay] is that which permits the reception, under certain circumstances and for limited purposes, of declarations of third parties, made contrary to their own interest; but it is almost universally held that this must be an interest of a pecuniary char-

acter; and the fact that the declaration alleged to have been thus extrajudicially made would probably subject the declarant to a criminal liability is held not to be sufficient to constitute it an exception to the rule . . . .' In the Donnelly case the declaration of Dick that he murdered the deceased would certainly subject Dick to civil liability as well, and was in that sense against his pecuniary interest. In the instant case, too, the declaration of Foss that he received part of the fruits of embezzlements was against his penal interest, even though it would subject the declarant to civil liability. Since the confession of Dick was not admissible to exculpate the accused, a fortiori it would not have been admissible to inculpate. Justice HOLMES dissented in the Donnelly case, and he was joined by Justice LURTON and Justice HUGHES. Professor Wigmore severely criticizes the majority opinion, and states that the HOLMES dissent represents what the law is or ought to be, i.e., that a declaration against *penal* interest only is admissible. But neither Justice HOLMES in his dissent, nor Professor Wigmore in his treatise, ever contended that such declaration against interest, to wit, a confession, by a party deceased, could be received in evidence to *inculpate* another." [Original emphasis.]

Thus, our Court recognized the existence of differing opinions as to admissibility of declarations against interest which tend to exculpate a defendant. It never reached that question, however, since *Antonini* involved only inculpatory statements. The court apparently realized that there may be good reason to exclude an inculpatory statement, where the defendant is unable to cross-examine the declarant. The same conclusion need not follow, however, where the statement tends to exculpate the defendant.

Moreover, the limitation on the use of declarations which affect only the declarant's proprietary interest has been severely attacked. A very recent case in

this regard is *People v. Brown,* 26 N.Y. 2d 88, 308 N.Y.S. 2d 85 (1970). In *Brown,* the defendant in a murder trial claimed self-defense on the ground that the decedent had a pistol drawn when defendant shot him. Several witnesses testified that decedent did not have a gun. A third party admitted to the police that immediately after the shooting he had picked up decedent's gun from the floor and apparently used that gun in a later robbery. This admission, if accepted in evidence, would have tended to support defendant's contention that decedent was armed. The third party refused to testify on constitutional grounds. Defendant sought to introduce his statement as a 'declaration against penal interest as it implicated the third party in the later robbery.

The New York Court of Appeals overruled its prior decision excluding such hearsay evidence stating:

"[T]he distinction which would authorize a court to receive proof that a man admitted he never had title to an Elgin watch, but not to receive proof that he had admitted striking Jones over the head with a club, assuming equal relevancy of both statements, does not readily withstand analysis.

"HOLMES attacked the distinction in his notable dissent in Donnelly (supra, pp. 277-278) in which, among other things, he said: 'The rules of evidence in the main are based on experience, logic and common sense, less hampered by history than some parts of the substantive law. There is no decision by this court against the admissibility of such a confession; the English cases since the separation of the two countries do not bind us; the exception to the hearsay rule in the case of declarations against interest is well known; no other statement is so much against interest as a confession of murder, it is far more calculated to convince than dying declarations, which would be let in to hang a man,

Mattox v. United States, 146 U.S. 140; and when we surround the accused with so many safeguards, some of which seem to me excessive, I think we ought to give him the benefit of a fact that, if proved, commonly would have such weight. The history of the law and the arguments against the English doctrine are so well and fully stated by Mr. Wigmore that there is no need to set them forth at greater length. 2 Wigmore, Evidence, §§1476, 1477.'

"Wigmore, as HOLMES notes, developed the argument against the distinction, not only on the basis of sheer logic, but on the historical ground that the English cases which created the distinction, particularly the Sussex Peerage Case (11 Cl. & Fin. 85, 109) were a departure from the basic rule of long standing that admissions against interest generally were received, where relevant, and the declarant dead. The Peerage decision was regarded by Wigmore as 'not strongly argued and not considered by the judges in the light of the precedents' (5 Wigmore, Evidence, [3d ed.], §1476, p. 283). Wigmore concludes his comprehensive analysis of the problem with the statement: 'It is therefore not too late to retrace our steps, and to discard this barbarous doctrine' (op. cit., p. 290).

. . .

"The rule in New York should be modernized to hold that an admission against penal interest will be received where material and where the person making the admission is dead, beyond the jurisdiction and thus not available; or where he is in court and refuses to testify as to the fact of the admission on the ground of self incrimination." *People v. Brown,* supra at 91-94, N.Y.S. 2d at 827-29.

The State of New York is not alone in reaching this conclusion. In 1964, the Supreme Court of California in an opinion by Justice TRAYNOR held that the admission of defendant's companion that heroin found on the

ground was hers was admissible. *People v. Spriggs,* 60 Cal. 2d 868, 874-875, 389 P. 2d 377 (1964).

Justice TRAYNOR, after discussing the general rule concerning the admissibility of declarations against penal interest, stated: "A declaration against penal interest is no less trustworthy. As we pointed out in People v. One 1948 Chevrolet Conv. Coupe, 45 Cal. 2d 613, 622, a person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest. Moreover, since the conviction of a crime ordinarily entails economic loss, the traditional concept of a 'pecuniary interest' could logically include one's 'penal interest.'" See also *Sutter v. Easterly,* 354 Mo. 282, 189 S.W. 2d 284 (1945); *Moore v. Metropolitan Life Ins. Co.,* 237 S.W. 2d 210 (Mo. C.A. 1951); *State v. Leong,* 6 Crim. L. Rep. 2453 (Ha. S. Ct. February 19, 1970).

This analysis in these cases is certainly sound. A distinction which would allow the admission of declarations against insignificant, insubstantial pecuniary interests while excluding declarations which bear the potential of serious penal punishment, would appear to be untenable and without logical support. Moreover, as our own court recognized in *Antonini,* supra: "[N]early all crimes, confessed to, impose as well a civil liability on the perpetrator." Thus, in the instant case, Prussel's admission would have exposed him to civil liability in any action by the restaurant owner or, in the alternative, by the insurance company which he sought to defraud. The distinction between penal and proprietary interests, therefore, is illogical, irrelevant and usually undetectable.

I would hold, therefore, that the court erred in failing to admit Prussel's admissions against penal interest. Accordingly, I would vacate the judgment of sentence and grant a new trial.