473 A.2d 176

**COMMONWEALTH of Pennsylvania**

v.

**Victor M. BRACERO, Appellant.**

Superior Court of Pennsylvania.

Submitted March 10, 1983.

Filed March 16, 1984.

Joseph C. Mesics, Public Defender, Lebanon, for appellant.

William L. Thurston, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before WICKERSHAM, BECK and MONTEMURO, JJ.

WICKERSHAM, Judge:

On February 17, 1981, appellant, Victor Bracero, was arrested and charged with the commission of a burglary [1] at the home of Mr. and Mrs. Steinrock, 225 South Tenth Street in Lebanon, Pennsylvania on February 14, 1981. On June 24, 1981, after a trial held before the Honorable John A. Walter, a jury found the appellant guilty as charged. Post trial motions were filed and denied. On January 22, 1982, appellant was sentenced to pay costs and a fine of $200.00 and to undergo imprisonment for not less than five (5) years or more than twenty (20) years. This appeal timely followed.

Appellant states the sole issue on appeal as follows:
Whether the Trial Court erred in refusing to admit the testimony of a Harry Tobias, a witness whose testimony was offered in Chambers, on two occasions, during the jury trial of the case?

Brief for Appellant at 2.

The record indicates that counsel for the appellant offered the following information in chambers prior to trial:

1. 18 Pa.C.S.A. § 3502; Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1.

MR. MESICS [counsel for appellant]: Harry Tobias, who lives at 89 Lebanon Village, will be called as a witness for Victor Bracero and he will testify as follows: That he knows a fellow by the name of Frankie Rodriquez who is also known in the community with an alias of "Spunk"; that he spoke with this fellow "Spunk" on Friday, the 20th of February, 1981. Harry was over at the Down Town Lounge socializing, and he saw "Spunk" there. "Spunk" was talking about going to Florida. "Spunk" told Harry that he would give him a hundred dollars for the ride, so he took "Spunk" with him.

During this trip between Lebanon and Miami, Harry observed that "Spunk" had a lot of money with him. He saw a lot of money in his wallet, and he dropped "Spunk" off in Miami. While they were going down there, "Spunk" told Harry Tobias that he did a robbery on Tenth Street.

They left for Florida on Saturday, the 21st of February, at 4:00 in the afternoon. They got there on Sunday, the 22nd of February, at 8:00 at night, and they drove down in Harry Tobias' Alpha Romeo Grand Prix automobile. "Spunk" told Harry that while he was committing this burglary, that the lady screamed and then he left the house. The house was several stories in heighth and it was on Tenth Street in Lebanon, and that "Spunk"—he will testify that "Spunk" looks exactly like Victor Bracero.

MR. FEEMAN [assistant district attorney]: I object to that. It's not admissible. Number one, it's irrelevant. Number two, it doesn't exclude the Defendant. Number three, it is all hearsay.

MR. MESICS: Okay. I would like to also state this on the record, that I also have another witness, a Maria Ramos[2] who went to Detective Heverling on the 5th of

2. In his post trial motions, appellant claimed that the trial court erred in refusing to admit the testimony of Harry Tobias. The post trial motions, however, make no mention of Maria Ramos' testimony. Neither does appellant's issue on appeal refer to Maria Ramos' testimony. Thus, any question as to the admissibility of Maria Ramos'

March of 1981 and reported essentially the same thing to Detective Heverling; that she had also talked to this fellow "Spunk" and that "Spunk" had talked to her about how he wasn't gonna take the rap, and that he had silver that was stolen and he was taking it over to Louie's Action Center. So, there's some basis for my offer other than something that Harry Tobias comes in here and tells me.

\*      \*      \*      \*      \*      \*

THE COURT: I don't know how you can overcome the hearsay.

MR. MESICS: Well, the only basis for my asking that his testimony be admitted was because it was on South Tenth Street in the city of Lebanon and the other facts support what I know about the case from the preliminary hearing and from the details, what happened—you know, how the Defendant or whoever it is that committed this left the premises; it was when the lady woke up and saw him or parts of his body, screamed and then the person left; and that it was a house with more than one story. So, that's the basis for my offer, your Honor.

THE COURT: I don't think that's enough there. The offer is rejected.

(N.T., 6–23–81, at 3–6). At a later time in the proceedings, counsel for appellant again attempted to have the testimony of Harry Tobias admitted.

MR. MESICS: Now, your Honor, I would again like to make my offer for the testimony of Harry Tobias; and there was something that I neglected to mention today, this morning when I made that offer. There was another item I think which is important in making his offer and hoping that you will admit his testimony, was that he also mentioned—this fellow "Spunk" also mentioned to Harry Tobias that it was a barber shop that was involved in this home, for what that's worth. This is a beauty parlor here and these are Spanish speaking people.

testimony has not been properly preserved for review. *See* Judge Walter's Opinion for the Court En Banc, 1–4–82, at 2–3.

THE COURT: No. My ruling still stands. (N.T., 6–23–81, at 58).

Appellant acknowledges that the evidence offered through Harry Tobias is hearsay evidence and is generally inadmissible. Brief for Appellant at 4. Appellant argues, however, that the statements made to Tobias by Rodriguez ("Spunk") were declarations against penal interest and therefore admissible as an exception to the hearsay rule.

Although our courts have now recognized the admissibility of the declaration against penal interest as an exception to the hearsay rule, it is also clear that not all such statements are *per se* admissible in evidence. Such declarations must be made under circumstances that provide considerable assurance of their reliability in order to be admissible as exceptions to the hearsay rule.

*Commonwealth v. Ayala,* 277 Pa.Super. 363, 368, 419 A.2d 1187, 1189 (1980) (citations and quotations omitted).

This court first recognized a declaration against penal interest as an exception to the hearsay rule in *Commonwealth v. Hackett,* 225 Pa.Super. 22, 307 A.2d 334 (1973). In that case, the defendant was found unconscious in his automobile. Heroin was detected in his bloodstream. Defendant was charged with possession of heroin and operating an automobile under the influence of a narcotic drug. Hackett's defense was that he had involuntarily consumed heroin when he drank an unfinished soda left at the gas station where he worked by one Dennis Keyser. Defense counsel made an offer of proof, seeking to call the defendant's former private counsel who would have testified that Keyser told him that he (Keyser) had "fixed" the defendant by putting heroin in the soda bottle. The defense also sought to introduce a signed written statement made by Keyser describing the incident as Hackett alleged it had occurred. The trial court refused to admit either the oral or written statements.

This court reversed. In doing so, the court stated:

> Public policy, the fundamental principles of fairness and due process of law require the admission of declarations against penal interest where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pretrial or during the trial itself.

*Id.*, 225 Pa.Superior Ct. at 29–30, 307 A.2d at 338.

Since the Pennsylvania Supreme Court has not as yet issued an opinion concerning declarations against penal interest which has received a majority of votes from its members,[3] we look to our own *Hackett, supra,* decision for guidance in determining the admissibility of the alleged statements in the instant case.

■ Basically, *Hackett* indicates that statements offered as declarations against penal interest are admissible only if they exculpate the defendant and are inherently trustworthy in that they were made to persons of authority or to persons having adverse interests to the declarant. Neither of these criteria are present in the instant case.

■ First, the offer of proof did not establish that Rodriguez' alleged statements would exculpate appellant. In contrast, the statements sought to be admitted in *Hackett* would have actually shown that Hackett's ingestion of the heroin was involuntary and was caused by Keyser. Instantly, we note that the evidence sought to be admitted through Harry Tobias does not actually exculpate the appellant. Rodriguez apparently never explicitly stated that he

3. We recognize that the Pennsylvania Supreme Court addressed the issue of a declaration against penal interest as an exception to the hearsay rule in both *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976) and *Commonwealth v. Nash,* 457 Pa. 296, 324 A.2d 344 (1974); however, neither opinion commanded the agreement of a majority of the court. Plurality opinions do not have precedential authority, *Commonwealth v. Scott,* 279 Pa.Super. 8, 420 A.2d 717 (1980); thus, we adhere to the traditional rule as expressed in our *Hackett* decision.

committed the burglary with which appellant is charged and that appellant was not involved. Furthermore, it is not clear that the burglary to which Rodriguez allegedly admitted is the same offense with which appellant is charged. The offer of testimony did not indicate on what date Rodriguez allegedly committed the burglary. Also, Rodriguez said only that he burglarized a house on Tenth Street; we do not know that it is the same house as that involved in the instant case.

Neither is the second *Hackett* criteria met in the instant case. In *Hackett,* the statements against penal interest were made to defendant and his counsel. One of the statements was written and signed by the declarant. Obviously, both the defendant and his counsel were in a position adverse to that of the declarant. Therefore, the statements were deemed to be trustworthy.

■ Instantly, the factual situation is much different. The declarations were not made under circumstances that assure us of their reliability. Rodriguez ("Spunk") allegedly made these statements to Tobias while Tobias was driving him to Florida. We do not believe that it was necessarily against Rodriguez' penal interest to make these statements to the man who was driving him out of the jurisdiction in which the crime allegedly occurred. Also, Rodriguez never made these statements to anyone in authority or to anyone with an interest adverse to his own.[4] Neither did Tobias report Rodriguez' statements to the police.

---

4. In her dissent, Judge Beck argues that when Rodriguez made the alleged statement to Tobias, "it would then be quite reasonable for Tobias to become concerned that by assisting a possible felon in fleeing the jurisdiction, he could be guilty of the crime of hindering apprehension." Thus, the alleged statement itself placed Tobias in an adverse position. We disagree. While Tobias might legally have been guilty of the crime of hindering apprehension, we don't believe that this necessarily placed Tobias in a position adverse to the alleged declarant. First, there is no indication that Tobias was aware of any possible legal proceeding that could be brought against him as a result of his actions. Further, we note that Rodriguez was paying Tobias to drive him to Florida. We don't believe Tobias was in an adverse position to the alleged declarant.

We do not believe that Rodriguez' alleged statements were made under circumstances that assure us of their reliability. From the record before us, we are unable to say that the trial judge abused his discretion in refusing to admit Harry Tobias' testimony. We uphold the ruling of the lower court.

Judgment of sentence affirmed.

BECK, J., files a dissenting statement.

BECK, Judge, dissenting:

I dissent. I would remand for a new trial on the ground that the trial court erred in excluding the proffered testimony by Harry Tobias concerning statements by Frankie "Spunk" Rodriguez against Rodriguez' penal interest. Although I base my conclusion on the law as it now stands, I suggest that this case demonstrates the need to clarify the law in this area.

The exception to the hearsay rule for declarations against interest originally extended only to statements against the declarant's pecuniary or proprietary interest. *See Donnelly v. United States*, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913). The United States Supreme Court recognized a limited exception for statements against penal interest "originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability" in *Chambers v. Mississippi*, 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973).

In this Court, the case for admissibility of declarations against penal interest was first presented persuasively in dissent in *Commonwealth v. Honigman*, 216 Pa.Super. 303, 264 A.2d 424 (1970) (Hoffman, J., dissenting). Judge Hoffman argued that "[t]he distinction between penal and proprietary interests ... is illogical, irrelevant, and usually undetectable." 216 Pa.Super. 309, 264 A.2d at 427. We first held a declaration against penal interest admissible in *Commonwealth v. Hackett*, 225 Pa.Super. 22, 307 A.2d 334 (1973). Our holding in *Hackett* was limited; we admitted

only those statements against penal interest which exculpate the defendant and are inherently trustworthy. Statements were trustworthy if they were made to a person in authority or to a person having an adverse interest to the declarant.

After *Hackett*, the Pennsylvania Supreme Court twice considered the scope of the hearsay exception for declarations against penal interest without reaching a conclusion which commanded a majority of the Court. In *Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d 344 (1974), only six Justices heard the case. *Two* Justices (Nix, J., concurred in the result) joined an opinion of the Court holding that only those declarations against penal interest made "under circumstances that provided considerable assurance of their reliability" were admissible. Id., 457 Pa. at 302, 324 A.2d at 346, quoting *Chambers v. Mississippi*, 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973). The opinion also expressed approval of our decision in *Hackett*. *Three* Justices, though, joined in a concurring opinion (which is properly denominated as the plurality opinion, *see Commonwealth v. Colon*, 461 Pa. 577, 581, 337 A.2d 554, 556 (1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976)), which would have held that all declarations against penal interest are admissible and circumstances affecting reliability merely go to the weight of the evidence. This analysis, stated by Roberts, J., writing for the plurality in the *Nash* concurrence, was restated by Justice Roberts while speaking for the Court in *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), but once again the opinion commanded the agreement of only three Justices (One Justice concurred in a separate opinion and three Justices concurred in the result).

I am of the opinion that the plurality in *Nash* and *Colon* stated the better rule. Declarations against interest are admitted under an exception to the rule against hearsay because *the very fact that a statement is against the speaker's interest* provides the quantum of reliability need-

ed to overcome the hearsay rule's bar to admissibility. *See Chambers*, 410 U.S. at 299, 93 S.Ct. at 1047 (the exception is "founded on the assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made"). Were I free to do so, I would follow this rule and admit the hearsay statements of Rodriguez simply as declarations against his penal interest, letting the circumstances surrounding the declarations be considered by the trier of fact in weighing the evidence.

However, in the absence of an authoritative statement from our Supreme Court, this Court has either felt itself bound by *Hackett, see Commonwealth v. Pompey*, 248 Pa.Super. 410, 375 A.2d 163 (1977), or has at least required strong indicia of reliability generally as an admissibility condition, *see Commonwealth v. Ayala*, 277 Pa.Super. 363, 419 A.2d 1187 (1980). Even under *Hackett*, though, I would find the statements in the instant case admissible.

I emphasize that this case does not involve an attempt by one accomplice or codefendant to exonerate another, a situation which we properly view with considerable skepticism. *Commonwealth v. Davis*, 308 Pa.Super. 398, 454 A.2d 595 (1982); *Commonwealth v. Ayala, supra*. Nevertheless, the majority would exclude the proffered testimony. It appears the majority holds that the requisite indicia of reliability are lacking because the statement was not made to someone in authority or with an adverse interest and because it did not *specifically* refer to the same crime or *specifically* exculpate the appellant.

It is not necessarily fatal to admissibility, though, that the declarant made the statement to a friend or acquaintance. That was precisely the situation in *Nash*, where those members of the Court who would require indicia of reliability held that it was improper for the trial court to exclude the proffered evidence as a matter of law without allowing the defendant to demonstrate its reliability. In the words of the United States Supreme Court in *Chambers*, "[Declarant] stood to benefit nothing by disclosing his role

... [to his friends], and he must have been aware of the possibility that disclosure would lead to criminal prosecution." *Chambers*, 410 U.S. at 301, 93 S.Ct. at 1048. Indeed, in the instant case, the declarant's inculpatory statement itself had the effect of placing the witness Tobias in an adverse position. Declarant disclosed his involvement in a burglary to Tobias while Tobias was driving him to Florida. It would then be quite reasonable for Tobias to become concerned that by assisting a possible felon in fleeing the jurisdiction, he could be guilty of the crime of hindering apprehension (18 Pa.C.S. § 5105). Therefore, the statements in question were made to someone with an adverse interest to the declarant.

The second issue, that of specificity, was addressed in *Commonwealth v. Hutchinson*, 290 Pa.Super. 254, 264, 434 A.2d 740, 745 (1981), where this Court held that "only those admissions containing specific incriminating facts" are admissible. The declaration found inadmissible in *Hutchinson* consisted of a statement by the defendant Hutchinson's brother to the effect that he had taken $600 in a robbery. No other details were given. Contrast this with the detailed statement of Rodriguez which described the premises, gave the street location, and related that in the course of the burglary, a woman in the house encountered declarant and screamed at him, whereupon he fled. Admittedly, declarant did not give an exact date or address and never said in so many words, "Bracero was not involved," but it is unrealistic to expect such precision of language and it is not mandated by *Hackett* and *Hutchinson*. *Hackett* merely requires that the statement exculpate the defendant; it does not hold that this cannot be done circumstantially. Were this statement offered in a trial of declarant for the burglary at 225 South Tenth Street, Lebanon, on February 14, 1981, we would not hesitate to find that the jury could properly draw an inference of guilt based on this and other circumstantial evidence. Moreover, each of the facts con-

tained in declarant's statement (the size of the house, the street location, the presence of a barber shop[1], the woman who screamed at the intruder) was corroborated by evidence admitted at trial of the facts and circumstances of the crime charged. In *Chambers,* the United States Supreme Court found such corroboration to be strong evidence of the statement's reliability. Under the circumstances, the inference that the declarant and the witnesses who testified at trial described the same incident is nearly inescapable.

The proffered hearsay declaration, when read in light of the facts and circumstances of the case, clearly exculpates appellant Bracero. First, declarant did not state to Tobias that anyone else entered the home with him or was involved in the burglary in any way. Secondly, Bracero was not charged with conspiracy, and the Commonwealth did not attempt to establish at trial that others had acted in concert with him. A similar situation led the United States Supreme Court in *Chambers* to state that "[t]o the extent that [declarant's] sworn confession tended to incriminate him, it tended also to exculpate Chambers." 410 U.S. at 297, 93 S.Ct. at 1046. Finally, Tobias was also prepared to testify to a close physical resemblance between Bracero and the declarant. Such evidence would be relevant only if there were just one burglar and appellant sought to establish a defense of mistaken identity.

I would hold, therefore, that the declaration of Rodriguez against his penal interest more than meets the admissibility requirements of *Hackett* and that the trial judge abused his discretion in excluding the evidence. The probative value of this evidence is very high, and it was obviously central to appellant's defense. Therefore, the case should be remanded for a new trial.

1. Evidence at trial established that the shop in the front of the residence was a beauty parlor, not a barber shop. However, declarant's mistake as to the probable gender of the customers of the shop is not nearly as significant as the fact that his identification of the business and general description of the building was closely corroborated by the evidence at trial.

Although my conclusion is based on an interpretation of *Hackett*, further clarification of this area of the law by the Supreme Court of Pennsylvania would be desirable.