528 A.2d 936

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Victor M. BRACERO, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 15, 1987.

Decided July 9, 1987.

Christopher J. Coyle, Lebanon, for appellant.

Robert W. Feeman, Dist. Atty., John E. Feather, Jr., Asst. Dist. Atty., Bradford H. Charles, Lebanon, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

LARSEN, Justice.

This is an appeal from an order of the Superior Court[1] which affirmed a judgment of sentence for burglary. The appellant, Victor Bracero, was tried before a jury in the Court of Common Pleas of Lebanon County, Pennsylvania, and convicted of the burglary of a dwelling house on South Tenth Street in the City of Lebanon. The appellant contends that the trial court erred in excluding certain exculpatory evidence offered by him during his trial.

On February 14, 1981, the home of Mr. and Mrs. Steinrock at 225 South Tenth Street, Lebanon, Pennsylvania was burglarized. On February 17, 1981, the appellant was arrested and charged with committing that crime. Subsequently, the appellant came to trial on the burglary charge.

At the beginning of the trial, appellant's counsel met in chambers with the trial judge and the prosecuting attorney. Appellant's counsel made an offer of testimony that proposed to place before the jury evidence tending to exculpate the appellant by implicating another individual as the burglar. The relevant exchange between and among defense counsel, the prosecutor and the court is quoted and set out in the opinion of the Superior Court as follows:

MR. MESICS [counsel for appellant]: Harry Tobias, who lives at 89 Lebanon Village, will be called as a witness for Victor Bracero and he will testify as follows: That he knows a fellow by the name of Frankie Rodriquez who is also known in the community with an alias of "Spunk"; that he spoke with this fellow "Spunk" on Friday, the 20th of February, 1981. Harry was over at the Down Town Lounge socializing, and he saw "Spunk" there. "Spunk" was talking about going to Florida.

---

**1.** This case was heard and decided by a panel of the Superior Court (Wickersham, Beck and Montemuro, JJ.). Judge Wickersham wrote the opinion of the court joined by Judge Montemuro. Judge Beck filed a dissenting opinion.

"Spunk" told Harry that he would give him a hundred dollars for the ride, so he took "Spunk" with him.

During this trip between Lebanon and Miami, Harry observed that "Spunk" had a lot of money with him. He saw a lot of money in his wallet, and he dropped "Spunk" off in Miami. While they were going down there, "Spunk" told Harry Tobias that he did a robbery on Tenth Street.

They left for Florida on Saturday, the 21st of February, at 4:00 in the afternoon. They got there on Sunday, the 22nd of February, at 8:00 at night, and they drove down in Harry Tobias' Alpha Romeo Grand Prix automobile. "Spunk" told Harry that while he was committing this burglary, that the lady screamed and then he left the house. The house was several stories in heighth and it was on Tenth Street in Lebanon, and that "Spunk"—he will testify that "Spunk" looks exactly like Victor Bracero.

MR. FEEMAN [assistant district attorney]: I object to that. It's not admissible. Number one, it's irrelevant. Number two, it doesn't exclude the Defendant. Number three, it is all hearsay.

MR. MESICS: Okay. I would like to also state this on the record, that I also have another witness, a Maria Ramos * who went to Detective Heverling on the 5th of March of 1981 and reported essentially the same thing to Detective Heverling; that she had also talked to this fellow "Spunk" and that "Spunk" had talked to her about how he wasn't gonna take the rap, and that he had silver that was stolen and he was taking it over to Louie's Action Center. So, there's some basis for my offer other than something that Harry Tobias comes in here and tells me.

(* The Superior Court noted that neither in his post trial motions, nor in his appeal did appellant raise any issue concerning the admissibility of Maria Ramos' alleged testimony.)

\* \* \* \* \* \*

THE COURT: I don't know how you can overcome the hearsay.

MR. MESICS: Well, the only basis for my asking that his testimony be admitted was because it was on South Tenth Street in the city of Lebanon and the other facts support what I know about the case from the preliminary hearing and from the details, what happened—you know, how the Defendant or whoever it is that committed this left the premises; it was when the lady woke up and saw him or parts of his body, screamed and then the person left; and that it was a house with more that one story. So, that's the basis for my offer, your Honor.

THE COURT: I don't think that's enough there. The offer is rejected.

(N.T., 6-23-81, at 3-6). At a later time in the proceedings, counsel for appellant again attempted to have the testimony of Harry Tobias admitted.

MR. MESICS: Now, your Honor, I would again like to make my offer for the testimony of Harry Tobias; and there was something that I neglected to mention today, this morning when I made that offer. There was another item I think which is important in making his offer and hoping that you will admit his testimony, was that he also mentioned—this fellow "Spunk" also mentioned to Harry Tobias that it was a barber shop that was involved in this home, for what that's worth. This is a beauty parlor here and these are Spanish speaking people.

THE COURT: No. My ruling still stands.

(N.T., 6-23-81, at 58).

*Commonwealth v. Bracero*, 325 Pa.Super. 494, 473 A.2d 176 (1984). The appellant argued to the Superior Court that the statements of "Spunk" offered through the testimony of Harry Tobias, even though hearsay, should have been admitted as an exception to the hearsay rule because they were declarations against the declarant's penal interest. The Superior Court, relying on its opinion in *Commonwealth v. Hackett*, 225 Pa. Super. 22, 307 A.2d 334 (1973), held that the statements made by "Spunk" were not made

under circumstances insuring that they were trustworthy and reliable. The Superior Court affirmed the trial court's ruling excluding the out of court statements allegedly made by "Spunk". The appellant's petition for allowance of appeal to the court was granted.

The appellant argues that the rule adopted by the Superior Court in *Commonwealth v. Hackett, supra.* and applied in this case should be rejected by this Court. In *Hackett,* the defendant was convicted of possession of heroin and of operating a motor vehicle while under the influence of a narcotic drug. At trial the defendant asserted the defense that he had been drugged involuntarily. He sought to call one Dennis Keyser to the stand to testify as a defense witness. It was ascertained preliminarily that Keyser would invoke his Fifth Amendment privilege against self-incrimination and refuse to testify if called as a witness. The trial judge, therefore, declined to permit defendant to call Keyser. In addition, the trial court refused to allow into evidence certain oral and written statements made by Keyser which exculpated the defendant. The defendant wanted to call his former counsel who would have testified that Keyser admitted to him that he, Keyser, put heroin in the defendant's soda bottle without the knowledge of the defendant. The trial court refused to allow this testimony. On appeal, the Superior Court reversed the trial court and held that Keyser's out of court statements made to both a member of the bar and the accused were relevant and trustworthy and should have been admitted. The court said:

> Public policy, the fundamental principles of fairness and due process of law. require the admission of declarations against penal interest where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pretrial or during the trial itself.

*Id.,* 225 Pa.Superior Ct. at 29–30, 307 A.2d at 338. The appellant argues that the admissibility requirement of *Hackett,* namely, that the evidence must show that the declaration against penal interest was made to "reliable persons of authority or those having adverse interests to the declarant," is not supported by logic or precedent. The appellant urges us to adopt the view expressed by a plurality of this Court in *Commonwealth v. Nash,* 457 Pa. 296, 324 A.2d 344 (1974), and *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975).

In *Nash,* the defendant Alfred Nash was tried as a co-defendant with one James Robinson. Nash was convicted of aggravated robbery, aggravated assault and battery and carrying a concealed weapon. Robinson was convicted of aggravated robbery. The trial court refused to allow the testimony of one Renee Edwards, a girlfriend of Robinson, who was called as a defense witness. Ms. Edwards would have testified that a Willis Daniels had admitted to her that he committed the crimes for which Nash and Robinson were on trial. The testimony was rejected as inadmissible hearsay. Following the trial in *Nash,* and while that case was pending on appeal, the Superior Court decided *Commonwealth v. Hackett, supra* and the U.S. Supreme Court handed down its decision in *Chambers v. State of Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Each of these cases decided that, under certain circumstances, an out of court declaration against penal interest is admissible into evidence as an exception to the hearsay rule.

In *Chambers,* the accused was not permitted to introduce the testimony of three witnesses who would have testified that another person confessed to the murder for which he was being tried. Finding that the ruling of the Mississippi court was in error, the U.S. Supreme Court reversed and remanded. The Court said:

> The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-

court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury. *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination. Among the most prevalent of these exceptions is the one applicable to declarations against interest—an exception founded on the assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made. Mississippi recognizes this exception but applies it only to declarations against pecuniary interest. It recognizes no such exception for declarations, like McDonald's in this case, that are against the penal interest of the declarant. *Brown v. State,* 99 Miss. 719, 55 So. 961 (1911).

*   *   *   *   *   *

Exclusion, where the limitation prevails, is usually premised on the view that admission would lead to the frequent presentation of perjured testimony to the jury. It is believed that confessions of criminal activity are often motivated by extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interest. While that rationale has been the subject of considerable scholarly criticism, we need not decide in this case whether, under the circumstances, it might serve some valid state purpose by excluding trustworthy testimony.

The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability.

*   *   *   *   *   *

■ ■ Few rights are more fundamental than that of an accused to present witnesses in his own defense. *E.g., Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest.

*Chambers v. State of Mississippi,* 410 U.S. at 298, 299 and 302, 93 S.Ct. at 1047, 1048 and 1049.

All of the Justices who participated in the decision in *Nash* agreed that the appellants were to have a new trial.[2] The Court split on the reasons for this conclusion. Two of the Justices, (O'Brien, J. joined by Eagen, J.) relying heavily on *Chambers* and *Hackett,* adopted the view that the requirements of *Chambers* and *Hackett* should be applied to the declarations offered by the appellants. Then Justice (now Chief Justice Nix) concurred in the result. The trial court was instructed to conduct a retrial "in light of the rule announced in *Chambers* and *Hackett.*" On the other hand, three of the Justices (Roberts, J. joined by Jones, C.J. and Pomeroy, J.) took the position that declarations against penal interest are admissible as a hearsay exception on the same basis as statements against pecuniary interest and proprietary interest without a preliminary determination of reliability.

**2.** *Nash* was argued before Jones, C.J. Eagen, O'Brien, Roberts, Pomeroy and Nix, JJ. Manderino, J. took no part in the consideration or decision.

In *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), this Court once again considered the issue of the admissibility as a hearsay exception, of out of court declarations against penal interest.  In *Colon,* the entire court agreed that it was not error for the trial court to refuse to admit the accused's offer of the statement of another person confessing to the crime for which the accused was charged.  The opinion of Justice Roberts announcing the decision of the Court was joined by the Chief Justice Jones and Justice Manderino.  Justices Eagen, O'Brien and Nix (now Chief Justice) concurred in the result and Justice Pomeroy wrote a separate concurring opinion.  In the opinion announcing the decision of the Court, Justice Roberts stated:

> The Court recently addressed the issue of the admissibility of declarations against penal interest in *Commonwealth v. Nash,* 457 Pa. 296, 324 A.2d 344 (1974).  Although the Court unanimously agreed that such declarations should be admissible in some circumstances, there was no majority view as to the rationale for or the conditions of admissibility.

> A plurality of the Court (Mr. Chief Justice Jones, Mr. Justice Pomeroy, and this writer) in a concurring opinion, id., 457 Pa. at 303, 324 A.2d at 347, concluded that there was no logical ground upon which declarations against penal interest could be distinguished from declarations against pecuniary and proprietary interest.  The plurality recognized that declarations against interest are admissible as an exception to the hearsay rule because their trustworthiness is safeguarded by the improbability that a declarant would fabricate a statement which is contrary to his own interests.  It resolved that this rationale was equally applicable whether the interest involved was pecuniary, proprietary, or penal.

*Conmmonwealth v. Colon,* 461 Pa. at 581, 337 A.2d 554.

■  It is clear that we recognize and accept that a declaration against the declarant's penal interest is admissible in evidence as an exception to the hearsay rule.  *Common-*

*wealth v. Colon, supra, Commonwealth v. Nash, supra, Commonwealth v. Hackett, supra.* We, however, have never endorsed the view that all such declarations against penal interest are automatically admissible as a hearsay exception merely because they are or tend to be against the declarant's penal interest. To be admissible, considerable assurance of the reliability of such a declaration is required. *Chambers v. State of Mississippi, supra, Commonwealth v. Hackett, supra.*

In the Federal Courts, the admissibility of declarations against penal interest is governed by the Federal Rules of Evidence, Rule 804(b)(3), which provides:

*Statement Against Interest.*

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible *unless corroborating circumstances clearly indicate the trustworthiness of the statement.* (Emphasis supplied.)

We believe that a rule requiring assurance of the trustworthiness and reliability of an out of court statement, such as that announced in *Hackett* and *Chambers,* and as mandated by the Federal Rules of Evidence (Rule 804(b)(3)), is the better view. Experience teaches us that it is not rare for friends, peers and family members to go to extraordinary lengths to help an accused win an acquittal or avoid a jail sentence. In *Chambers,* the Supreme Court noted the following hypothetical:

"A could be charged with a crime; B could tell C & D that he committed the crimes; *B could go into hiding* and at A's trial C & D would testify as to B's admission

of guilt; A could be acquitted and B would return to stand trial; B could then provide several witnesses to testify as to his whereabouts at the time of the crime. The testimony of those witnesses along with A's statement that he really committed the crime could result in B's acquittal. A would be barred from further prosecution because of the protection against double jeopardy. No one could be convicted of perjury as A did not testify at his first trial, B did not lie under oath, and C & D were truthful in their testimony." (emphasis in original)

*Chambers v. State of Mississippi*, 93 S.Ct. at 1049. The Commonwealth, in its brief, proposes a similar hypothetical situation as follows:

[A] is charged with a crime based upon circumstantial evidence. A convinces his girlfriend or a family member to testify that they heard B state that he committed the crime. Perhaps A might convince two or three people to state the same story in court. Such evidence would be powerful and could very well raise a reasonable doubt in the minds of the jury. Moreover, if B is not located or if B is unidentified, there would be no way to test the veracity of what A's friends and relatives might state. (Commonwealth's Brief, p. 10)

Furthermore, it must be remembered that in such cases we are often dealing with "witnesses" who themselves are actively engaged in a criminal lifestyle. "Telling a story" to help a friend or relative to "beat the rap," can not be viewed as an extraordinary occurrence. Accordingly, we hold that declarations against penal interest are admissible as an exception to the hearsay rule only when there are circumstances that provide clear assurance that such declarations are trustworthy and reliable.

In the instant case, we find no error in the trial court's conclusion, which was affirmed by the Superior Court, that the alleged statements against penal interest attributed to "Spunk" were not made under circumstances

that provide the required assurance of reliability and therefore, are inadmissible.

The order of the Superior Court is affirmed.

NIX, C.J., files a concurring opinion which HUTCHINSON and ZAPPALA, JJ., join.

FLAHERTY, J., files a concurring opinion.

NIX, Chief Justice, concurring.

I agree that the proffered testimony was properly excluded. In my judgment the holding of the Opinion Announcing the Judgment of the Court that declarations against penal interest may provide an exception to the hearsay rule where the circumstances surrounding the declaration provide a clear assurance of their trustworthiness was purely gratuitous. Since the Opinion Announcing the Judgment of the Court fails to provide any guidance as to what circumstances would supply the necessary reliability for establishing the exception, I believe the discussion should be regarded as pure *dicta* without any precedential value. When a situation presents itself that would justify the recognition of such an exception to the hearsay rule we then can properly acknowledge such an exception.

HUTCHINSON and ZAPPALA, JJ., join in this concurring opinion.

FLAHERTY, Justice, concurring.

I disagree that, before a declaration against penal interest may be admitted, a preliminary determination that there exists a "considerable assurance of reliability" is required. At the outset, some assurance of reliability inheres in the "circumstance that the fact stated, being against the declarant's interest, is not likely to have been stated untruthfully." 5 Wigmore, Evidence § 1455. The ultimate question of the degree of reliability which should be attributed to the evidence is a proper one for resolution by the fact-finder. During the trial, opposing counsel, through the vehicle of cross-examination, may probe for weaknesses, inconsisten-

cies, and the bias of the witness attesting to the out-of-court declaration. In closing, the fact-finder's attention may again be focused upon the reliability of the declaration through proper argument. Ultimately, the question of the degree of reliance to be placed on the declaration should be determined by the fact-finder.

Those courts which have imposed a requirement of additional indicia of reliability have, as the opinion authored by Mr. Justice Larsen correctly notes, been largely motivated out of fear of opening a door to perjured testimony regarding declarations that were never made. In the words of Professor Wigmore, however, "This would be a good argument against admitting any witnesses at all, for it is notorious that some witnesses will lie and that it is difficult to avoid being deceived by their lies. The truth is that any rule which hampers an honest man in exonerating himself is a bad rule, even if it also hampers a villain in falsely passing for an innocent." 5 Wigmore, Evidence § 1477. Thus, where the out-of-court declarant is unavailable to testify at trial, I would admit evidence of his declaration against penal interest, and allow this evidence to be tested in the traditional fashion.

Because it has not been demonstrated that the out-of-court declarant was indeed unavailable at the time of trial, however, I would exclude the evidence in this case. The witness Tobias would have testified that the declarant left for Florida on the 21st of February. The trial of the instant matter was conducted in June of the same year. It seems likely that the declarant intended to absent himself from the jurisdiction for the purpose of avoiding prosecution, and Tobias's testimony would have indicated the same. But whether the declarant was still absent at the time of trial is not known. Before admitting the out-of-court declaration, I would require the party offering the evidence to show that the declarant's presence at trial could not have been secured. As this was not done, the evidence was properly excluded. Thus, I concur in the result.