597 A.2d 294

**ACME MARKETS, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ANNETTE PILVALIS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 30, 1990.

Decided Sept. 16, 1991.

402

Matthew D. Dempsey, for petitioner.

Jerome L. Cohen, for respondent.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by Acme Markets Inc. (Employer) from an order of the Workmen's Compensation Appeal Board

(Board) which affirmed the decision of a referee [1] denying the petition of Employer to modify/terminate benefits to Annette Pilvalis (Claimant).

The referee found that Claimant had been employed by Employer as a checker when, on January 15, 1981, she suffered a fracture to her ankle. She received compensation for total disability for this injury. Thereafter she attempted to return to work on several occasions, but always without success. The referee specifically found that as a complication of her work-related injury Claimant developed phlebitis and is subject to recurring bouts of that disease. He also found that she is unable to return to her time-of-injury job because extended periods of standing cause her pain and extended periods of sitting will predispose her to phlebitis.

Employer presented the medical testimony of two doctors one of whom was Claimant's own treating physician. *Claimant presented no evidence.* Dr. Sgarlat opined that Claimant could "perform a job which would involve sitting or standing on an alternative basis, not necessarily 50/50, but the job should permit her to get off of her feet occasionally after an hour or so" (Referee's finding of fact 5). Dr. Sgarlat also stated, and the referee so found, that Claimant could stand or walk four to six hours per day and sit five to eight.

The referee also credited the testimony of Dr. Blum, Claimant's treating physician, and found that, according to him, Claimant could "perform any job which involved mostly sitting or which involved relatively brief periods of standing after which she could sit down" (Referee's finding of fact 6).

Employer additionally presented the testimony of a vocational expert regarding six positions to which Employer had

1. There had been an initial decision by the referee denying Employer's petition. On appeal the Board vacated and remanded for clarification because testimony on the issue of job availability was uncontradicted and yet the referee, without making any specific credibility determinations, appeared to reject it. Our references are to the adjudication after remand.

referred Claimant. This witness, Robert Ozovek, visited each of the job sites and observed the duties of each position for approximately thirty to sixty minutes. He did not observe a full work day at any site and stated that all information for the job descriptions that he had prepared was given to him by the prospective employers. *Every one of the six jobs was approved by both of the doctors.* Nonetheless, the referee found that none of the jobs was available to Claimant because "none provided the option of alternating positions between sitting and standing." Referee's finding of fact 9 of April 9, 1990. He also found:

> [T]he jobs, as offered, do not provide nor do they comply with the restrictions and limitations imposed by either Dr. Sgarlat and/or Dr. Blum. All of the jobs, in some manner, meet either the requirements and/or limitations of Dr. Blum or Dr. Sgarlat but not in their totality and, thus, we reject the jobs as not being consistent with the limitations as imposed by both physicians.

Referee's finding of fact 10 of April 9, 1990.

Concluding that Employer had failed in its burden to show job availability, the referee denied its petition. On appeal the Board viewed the issue as one involving merely a credibility determination by the referee and affirmed. It stated, "The Referee rejected the credibility of the Doctors' testimony as it related to Claimant's ability to perform the available jobs, finding that none of the available jobs were within the limitations imposed by the Doctors."

We observe that where, as here, the party with the burden of proof was the only party who presented evidence, and failed to prevail below, the relevant inquiry is whether the fact finder capriciously disregarded competent evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988); *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987), and, the capricious disregard of competent evidence is the willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has

no basis to challenge. *Arena v. Packaging Systems Corp.,* 510 Pa. 34, 507 A.2d 18 (1986).

 Employer asserts that the referee did capriciously disregard competent evidence when he rejected uncontradicted medical evidence concluding that Claimant was able to perform the six available jobs.[2] We are constrained to agree. Although generally a referee may disregard the testimony of any witness, even though the testimony is uncontradicted, *Butler v. Workmen's Compensation Appeal Board (Commercial Laundry, Inc.),* 67 Pa.Commonwealth Ct. 393, 447 A.2d 683 (1982), he does not have the discretion to capriciously disregard competent evidence without a reasonable explanation or without specifically discrediting it. *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works),* 515 Pa. 315, 528 A.2d 580 (1987); *Russell.* In *Farquhar,* our Supreme Court, quoting with approval the words of Justice Hutchinson in *Jasper v. Workmen's Compensation Appeal Board,* 498 Pa. 263, 445 A.2d 1212 (1982), stated:

> Previous cases have set forth the scope of review where, as here, the fact finder's decision is against the party having the burden of proof in terms such as 'capricious disregard of competent evidence', *Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968), 'willful disbelief of otherwise credible evidence', *Bullock v. Building Maintenance Inc.,* 6 Pa.Commonwealth Ct. 539, 297 A.2d 520 (1972).... *At the very least the findings and conclusions of the fact finder must have a rational basis in the evidence of record and demonstrate an appreciation and correct application of underlying principles of substantive law to that evidence.* (Emphasis in original.)

*Id.* 515 Pa. at 324, 528 A.2d at 584–85. When a referee rejects uncontradicted evidence and makes findings or con-

---

**2.** Employer asserts that the Board abused its discretion by holding that the referee's factual and legal errors were harmless. Legal errors are also within our purview to review. *Russell.* Contrary to Claimant's assertion, we believe this issue has been properly raised and preserved, although a bit inartfully.

clusions which have no rational basis in the evidence of record, that referee capriciously disregards competent evidence. *Farquhar.* Simply stated, a referee may not *"reject"* credible and uncontradicted medical evidence without explaining why the evidence is "rejected". *Farquhar.*

■ In the present case, both physicians testified that they reviewed all six available jobs and determined that Claimant *was* medically able to perform the duties demanded by all the jobs. The pertinent findings are as follows:

5. The Defendant presented the testimony of Dr. Joseph Sgarlat, who examined the Claimant on March 24, 1986.... Dr. Sgarlat approved various positions for the Claimant which has been previously located for her. Dr. Sgarlat testified that each of the jobs would be within her physical restrictions.

6. The Defendant further presented the testimony of Robert Ozovek of Vocational Rehabilitation Services, regarding six positions that he had referred to the Claimant. Mr. Ozovek testified as an expert witness, that all of the jobs were within the vocational capabilities of this Claimant. The Referee, however, finds that factually these jobs did not meet all of Dr. Sgarlat's requirements or of Dr. Richard Blum, who was treating the patient, but had initially examined her on behalf of the Defendant.... Doctor [Blum] reviewed each of the positions which were presented and approved them. Again, as with Dr. Sgarlat, the jobs did not fit their own limitations.

. . . .

10. The Referee finds that the jobs, as offered, do not provide nor do they comply with the restrictions and limitations imposed by either Dr. Sgarlat and/or Dr. Blum. All of the jobs, in some manner, meet either the requirements and/or limitations of Dr. Blum or Dr. Sgarlat but not in their totality and, thus, we *reject* the jobs as not being consistent with the limitations as imposed by both physicians. (Emphasis added.)

Simply put, the referee, in finding that the jobs *do not* comply with the limitations imposed by the two physicians when both physicians testified that the jobs *do* comply, appears to have extracted the *medical* analysis from the Doctors' testimony and, applying that analysis to the duties of the available jobs, concluded that Claimant was not medically able to perform the jobs. We have reviewed the entire record and are constrained to hold that in light of the medical testimony of Dr. Sgarlat and Dr. Blum the referee could not have reached the conclusion that Claimant was unable to perform the available jobs *in direct contradiction to what they, themselves, opined.* Both doctors stated categorically and without contradiction, after reviewing the work entailed in the performance of the six positions, that Claimant could perform the tasks; yet, the referee, without explanation, found that Claimant could not perform any one of them. Therefore, because the referee's finding has no rational basis in the evidence of record, the referee erred by capriciously disregarding competent evidence. *Farquhar.*

The test an employer must meet to demonstrate job availability has been set forth by our Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). The *Kachinski* Court wrote:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.*, 516 Pa. at 252, 532 A.2d at 380.

■ Employer in this instance met its burden. The focus is on prong two of the *Kachinski* test, specifically centering on whether the job referrals fit the occupational category. *Kachinski* itself dealt primarily with the question of whether a job must be potentially available to the claimant or actually available. In *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Co.)*, 516 Pa. 256, 532 A.2d 382 (1987), the Supreme Court stated that an employer meets its burden of providing sufficient evidence that a job is suitable for a claimant if the employer produces medical evidence describing the claimant's capabilities and vocational evidence classifying and describing the job. A hypertechnical analysis of the jobs in question matching every medical restriction to all the duties of the available job is not required. *Id.*

■ Despite the Supreme Court's holding that an employer need not match every individual medical restriction to every one of the job duties in a proffered position, we believe that the referee and Board imposed precisely that duty on Employer here. First it must be stressed, contrary to the Board's belief, that *the referee never rejected the testimony of either doctor or the vocational expert on credibility grounds.* Instead, he faulted Employer's vocational expert for not observing each potential job for an entire work day and for gathering information about the job duties from the potential employers rather than solely by his own observation. Such stringent evidentiary requirements have no basis in caselaw, fly directly in the face of *Farkaly,* and in our view constitute legal error. Further, the referee was troubled by the fact that in no job description was it specifically indicated that Claimant could stand or sit at her option. Our Supreme Court clearly stated that:

[I]n *Kachinski* we rejected the Commonwealth Court's approach of requiring the employer to specifically detail

every aspect of a job before it can be considered within the capability of the claimant.

*Farkaly,* 516 Pa. at 259, 532 A.2d at 383. Moreover, since both medical experts concluded that the jobs offered by Employer were within the capabilities of Claimant, it was unnecessary for the referee to engage in a detailed analysis of the job duties and medical restrictions in order to determine if the Claimant could perform the jobs.

We thus conclude that under *Farkaly* and *Kachinski,* Employer met its burden as a matter of law. And, inasmuch as it is undisputed that Claimant did not follow up on any of the referrals, Employer is entitled to prevail on its petition. *Kachinski.*

■ We reverse the Board's order and remand for modification of benefits.[3]

## ORDER

NOW, September 16, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed and the case is remanded for modification of benefits.

Jurisdiction relinquished.

Dissenting opinion by BARRY, Senior Judge.

BARRY, Senior Judge, dissenting.

I must respectfully disagree with the majority opinion's analysis of the referee's actions in this case. The referee did no more than decide *as a question of fact* that the

---

3. It has not escaped our notice that Claimant's counsel objected on the basis of hearsay to the vocational expert's testimony as to specific job duties. First, to the extent that the expert's information was gained by personal observation it is not hearsay. Second, the testimony of the expert, although based upon data not admissible in evidence, is legally competent if that data is of the type reasonably relied on by an expert in the particular field in forming an opinion on the subject. *Kearns by Kearns v. DeHaas,* 377 Pa.Superior Ct. 200, 546 A.2d 1226 (1988), *petition for allowance of appeal denied,* 522 Pa. 584, 559 A.2d 527 (1989).

claimant was not capable of performing the jobs to which she was referred by the employer. Such a credibility determination is clearly within the province of the referee and beyond our review. I would affirm the order of the Board and thus must dissent.

As I believe the referee's determinations concerning credibility are crucial to the outcome of this case, I find it necessary to quote the entire decision of the referee.

## FINDINGS OF FACT

1. Neither party rejected the provisions of the Workers' Compensation Act of 1972, as amended.

2. This case was previously before the Referee and the Referee entered an Order on February 9, 1989 denying Defendant's Petition. Thereafter, an Appeal was filed with Workers' Compensation Appeal Board, and in a Decision dated, December 1, 1989, the Referee was reversed and the case remanded. In reviewing the directive of the Board, we note that they rely on *Russell v. the Workers' [Workmen's] Compensation Appeal Board* [121 Pa.Cmwlth. 436], 550 A.2d 1364 as the basis of remand and indicated that the Referee did not state that he did not believe the testimony of the Doctors or the vocational witnesses, and as a result, the testimony was uncontradicted.

3. That on April 7, 1986, the Defendant filed a Petition for Termination/Modification in the above captioned matter, alleging that the Claimant was recovered sufficiently to return to her pre-injury job or in any event, to return to a light duty job, and to which Petition, Claimant filed an Answer denying that she was able to return to work. Several hearings were held.

4. Factually, Claimant was injured on January 15, 1981, when she fractured her left ankle and she has received compensation at a rate of $239.33 based on an average weekly wage of $359.00 per week and continues to receive compensation until the present time.

5. The Defendant presented the testimony of Dr. Joseph Sgarlat, who examined the Claimant on March 24, 1986. He noted that the Claimant was initially treated by Dr. Volpeti and developed some phlebitis in her leg after the injury in 1981 and Claimant says that she had no history of any recurrent phlebitis. At the time of his evaluation, he felt the ankle had healed, but Claimant could not return to the job of a checker, her previous work. Dr. Sgarlat felt that she could perform a job which would involve sitting or standing on an alternative basis, not necessarily 50/50, but the job should permit her to get off of her feet occasionally after an hour or so. He felt that she could stand or walk four to six hours a day, that she could sit five to eight hours a day and that she could drive an automobile. Dr. Sgarlat approved various positions for the Claimant which had been previously located for her. Dr. Sgarlat testified that each of the jobs would be within her physical restrictions.

6. The Defendant further presented the testimony of Robert Ozovek of Vocational Rehabilitation Services, regarding six positions that he had referred to the Claimant. Mr. Ozovek testified as an expert witness, that all of the jobs were within the vocational capabilities of this Claimant. The Referee, however, finds that factually these jobs did not meet all of Dr. Sgarlat's requirements or of Dr. Richard Blum, who was treating the patient, but had initially examined her on behalf of the Defendant. Dr. Blum felt that the Claimant was able to return to work, but was not able to return to her previous employment. The Doctor did not feel that there were any limitations based upon her previous phlebitic condition, but did feel that she had limitations because of pain in her ankle. He felt that she could perform any job which involved mostly sitting or which involved relatively brief periods of standing after which she could sit down. The Doctor reviewed each of the positions which were presented and approved them. Again, as with Dr. Sgarlat, the jobs did not fit their own limitations.

7. Claimant's phlebitis developed as a complication of the original injury and is susceptible to recurring bouts of phlebitis.

8. It is clear Claimant cannot return to her original employment as a checker because prolonged periods of standing is contraindicated due to the pain experienced by her, as prolonged periods of sitting will predispose Claimant to phlebitis.

9. Of the positions described by Defendant's Vocational Expert, none provided the option of alternating positions between sitting and standing, and he did not observe a work day at any of the proposed job sites. All information was prepared by the employers as it relates to job requirements.

10. The Referee finds that the jobs, as offered, do not provide nor do they comply with the restrictions and limitations imposed by either Dr. Sgarlat and/or Dr. Blum. All of the jobs, in some manner, meet either the requirements and/or limitations of Dr. Blum or Dr. Sgarlat but not in their totality and, thus, we reject the jobs as not being consistent with the limitations as imposed by both physicians.

## CONCLUSIONS OF LAW

1. Both parties are bound by the provisions of the Workers' Compensation Act of 1972, as amended.

2. Defendant has the burden of proving that Claimant's disability has ceased or has been reduced or that the ability to perform available work, while Claimant has no burden to prove her continuing disability.

3. The Defendant has failed to establish available jobs within the limitations as imposed by their own Doctors.

(Referee's decision, 4/9/90).

We must first note that the referee could have made our task much simpler had he made *specific* findings with regard to the credibility of the witnesses. A review of the entire decision of the referee quoted above reveals not one

instance in which he specifically accepts or rejects any of the testimony before him.

As the majority correctly points out, we are dealing here with a situation where the employer, the party saddled with the burden of proof on a modification/termination petition, was the only party to present evidence. In that regard, our following statement in *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987), is relevant:

> Where ... the party with the burden of proof is the *only* party to present evidence, and that party does *not* prevail before the [fact finder], we must first examine the record to determine whether that party as a matter of law, has met his burden. If he has not, we will affirm the agency decision. If, on the other hand, it appears that the burdened party *has* presented sufficient competent evidence that, *if believed*, would overcome his burden of proof, and it is not clear from the adjudication that a credibility determination has been made, we will remand the matter to the [fact finder] for the proper findings and conclusions of law following those findings. *We will not infer a credibility determination merely from the decision of the fact finder against the party with the burden of proof.*

*Id.*, 106 Pa.Commonwealth Ct. at 97–98, 525 A.2d at 845 (emphasis in original).

I do agree with the majority that there is competent evidence in this record which if believed would be sufficient to allow the employer to meet its burden in this case. The employer presented testimony of two doctors, both who opined that the claimant could return to work with certain restrictions. The employer also presented evidence that the claimant was referred to jobs allegedly within those restrictions and that she failed to follow through on any of the referrals. Under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), this evidence if credited would have sufficed to require the grant of the employer's modification

petition. At this point, however, my agreement with the majority opinion ends.

The majority states that the referee and the Board erred in imposing a higher level of proof on the employer than *Kachinski* requires. This referee in no way required the employer to "match every individual medical restriction to every one of the job duties in a proferred position...." (Maj. opinion, pp. 405–407. *If that is what had been done, I would agree with the majority that imposing such a duty was an error of law.* I believe, however, that the referee in the present case *simply did not believe that this claimant was capable of doing the jobs in question.*

Such a determination is certainly beyond our review. In a portion of *Kachinski* quoted in the majority opinion, the Supreme Court stated that "it will be up to the referee to determine whether the claimant can perform the job in question." *Id.,* 516 Pa. at 251, 532 A.2d at 379. Even in the portion of Judge Doyle's Dissenting Opinion in *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Co.),* 91 Pa.Commonwealth Ct. 571, 498 A.2d 34 (1985), which was quoted with approval by the Supreme Court in reversing this Court, 516 Pa. 256, 532 A.2d 382 (1987), Judge Doyle stated, "It is within the *referee's province* as fact finder to assess these duties and restrictions and determine if Claimant could perform the jobs." 91 Pa.Commonwealth Ct. at 576, 498 A.2d at 34 (emphasis in original).

Under the guise of the standard of "capricious disregard", the majority adopts the role of a fact finder in this case by giving credit to the testimony of both doctors that the claimant was capable of performing the light duty jobs. In *Arena v. Packaging Systems Corp.,* 510 Pa. 34, 507 A.2d 18 (1986), cited by the majority, the Supreme Court reversed this Court's application of the capricious disregard standard, concluding that application of that standard encroached upon the referee's decision concerning the credibility of certain medical testimony. Arena is the only case I have been able to find where an appellate court (the Com-

monwealth Court) applied the capricious disregard standard to reverse a credibility determination of a fact finder. The Supreme Court's reversal of our decision shows that was error.

I must also comment on what I believe to be an incorrect reading of the Supreme Court's decision in *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 515 Pa. 315, 528 A.2d 580 (1987). The majority reads that case for the proposition that a "referee may not 'reject' credible and uncontradicted medical evidence without explaining why the evidence was rejected." (Maj. opinion at p. 405). *Farquhar* simply does not stand for that proposition. In that case, the referee made a finding of fact that the worker was not disabled. This finding was based upon the expert testimony of the worker's medical expert. The Supreme Court stated that the only fair reading of that doctor's testimony would show that the testimony was exactly the opposite, i.e., the worker should not return to her pre-injury job and was, in fact, disabled. When the Supreme Court applied the capricious disregard standard, it did not engage in fact-finding; rather, it held that the referee's interpretation of the doctor's testimony was incorrect. Furthermore, the statement of the majority, quoted above, begs the question when it states that a referee must explain his rejection of "credible" evidence. Only a referee may decide what evidence is credible. This Court simply is prevented from substituting its views of the credibility of any evidence. *Arena.* I can find nothing in the referee's decision which would lead me to conclude that he accepted as credible all of the testimony of both doctors.[1] That decision discloses, at a minimum, that the referee did not believe those portions of the doctors' testimony where each testified that this claimant was capable of doing the

1. It is true that the referee never *specifically* rejected any of the evidence on credibility grounds. A reviewing court may infer that such a determination has been made as long as that inference is not based solely upon the fact that the referee made a decision against the party saddled with the burden of proof. *Kirkwood.* Such an inference may be fairly drawn in this case.

jobs because of her residual disability. While it may be true that the referee did believe the medical testimony concerning the claimant's restrictions, he did not believe that the jobs offered fell within those restrictions. It was within the sole province of the referee to decide if this claimant could perform the jobs. He decided that she could not; therefore, he was correct when he concluded that the employer failed to meet its burden.