705 A.2d 417

**William JOYCE, Appellant,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (OGDEN/ALLIED MAINTENANCE and Travelers Insurance Company), Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided July 31, 1996.

Reargument Granted Oct. 22, 1996.

Reargued Jan. 27, 1997.

Decided Dec. 29, 1997.

Reargument Denied April 20, 1998.

Robert A. Sloan, Philadelphia, for Appellant.

Jane A. Lombard, Philadelphia, for Appellees.

Norman W. Haig, Secty, W.C.A.B.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

### OPINION

ZAPPALA, Justice.

This is a workers' compensation case in which the claimant's total disability benefits were modified to partial disability benefits upon petition by the employer. The issue

on appeal is whether the findings of fact on which the modification was based are supported by substantial evidence. In our previous Opinion, 545 Pa. 135, 680 A.2d 855 (1996), we determined that certain evidence submitted by the employer was hearsay and should not have been admitted. We concluded that the finding of job availability was based on this hearsay, and held that there was no substantial competent evidence to meet the employer's burden of showing available work.[1]

■■ In its petition for reargument, the Appellee suggested that our analysis misapprehended the effect of the determination regarding the hearsay evidence. That evidence went not to the issue of job availability but to the issue of the claimant's follow-through on the job referral. The question, therefore, is whether there is substantial evidence to support the finding that the employer referred the claimant to an available job within his physical limitations, and more importantly, whether absent the hearsay there is substantial evidence to support the finding that the claimant failed to make a good faith effort to obtain this work.

We agree that our previous analysis confused the evidence and the respective burdens of proof. Upon review of the record, we conclude that there is substantial evidence to support each of the findings of fact, and thus the order modifying the claimant's benefits must be affirmed.

William Joyce injured his back at work and was receiving benefits for total disability. Joyce's physician eventually released him to light duty work subject to certain restrictions. A vocational counselor engaged by his employer notified him

1. In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), we provided a guide to analyzing claims when an employer seeks modification of benefits based on a claimant's ability to return to work. The employer must produce medical evidence of a change in condition and evidence of a referral to an open job that fits the occupational category for which the claimant has been given medical clearance. The claimant must then demonstrate that he or she has in good faith followed through on the referral. If the referral fails to result in a job, the benefits should continue unmodified. However, benefits may be modified if the claimant fails to pursue a valid referral.

of three suitable jobs. As to one of these, a dispatcher position at Trap Rock Concrete Company, the referral indicated that Joyce was to contact Mr. Bob Root. According to Joyce, he called Trap Rock three days after receiving the notification from the vocational counselor and asked to speak to Root. He was told that Root was not available, and that the job had been filled several weeks before and no applications were being taken. Joyce did nothing further with respect to this referral.

The vocational counselor's testimony was the focus of our previous Opinion. Specifically, we determined that the counselor gave inadmissible hearsay testimony when she stated that she had spoken with Root and he said that Joyce had not applied for the dispatcher's position.[2] Unfortunately, we drew an erroneous conclusion from this determination when we stated, "*the finding of job availability* in this case *was based upon unsubstantiated hearsay testimony* elicited from the employer's vocational expert *that Appellant did not apply* for the Trap Rock Concrete position." 545 Pa. at 142, 680 A.2d at 858 (emphasis added). The finding of job availability was, in fact, based on the vocational counselor's testimony about how she had identified the positions contained in her letter to Joyce.[3] The hearsay testimony that Joyce did not apply for the Trap Rock job had no bearing on this finding. It was relevant only to the issue of whether Joyce had "in good faith followed through on the job referral".

The referee found that Joyce "failed to make a good faith effort to obtain this available work." The question is whether, excluding the inadmissible hearsay, this finding is supported

**2.** We likewise held in *Pertile v. Workmen's Compensation Appeal Board (Construction Engineering Consultants, Inc.)*, 546 Pa. 569, 687 A.2d 367 (1997), that a vocational expert's testimony that a claimant did not apply for a referred position, based on follow-up conversations with the employer, was inadmissible hearsay.

**3.** To the extent that this testimony was based on hearsay, it was nevertheless admissible because it was the type of information reasonably relied on by an expert in the field in forming an opinion. See *Acme Markets v. Workmen's Compensation Appeal Board (Pilvalis)*, 142 Pa.Cmwlth.400, 597 A.2d 294 (1991). A vocational counselor acquires job descriptions and information about job availability from prospective employers and relies on this information in making job referrals.

by substantial evidence nonetheless. The answer is yes. In fact, Joyce conceded the content of the inadmissible hearsay. He testified that he did not apply for the Trap Rock job after the person he spoke to on the phone told him that the job had been filled. Accordingly, the point of contention is not whether Joyce applied for the job (he acknowledged that he did not) but whether he made a good faith effort even though he did not apply for it.

The referee did not identify the evidence on which he based his finding. He stated only that, "By the claimant's own admission he did not due [sic] that which is necessary to secure a job." This is apparently a reference to Joyce's deposition testimony, on cross-examination by the employer's counsel, about his actions upon receiving the job referral letter from the vocational counselor. After eliciting Joyce's testimony that he had done no more than make the phone call to Trap Rock and had simply submitted applications at the other two locations, without making any follow-up contacts, the employer's counsel asked Joyce whether he thought he would have to do more in order to get a job. Joyce responded, "Yes."

The employer also emphasized two other points in argument to the referee and at each level on appeal: (1) that Joyce had waited several days after receiving the referrals to contact any of the prospective employers; and (2) that Joyce had made no effort to speak with Bob Root, the designated contact at Trap Rock, but had accepted the representation of the person who had answered the phone, without knowing that person's authority, that no applications were being accepted.

Upon review, we agree that this evidence supports the referee's finding that Joyce failed to make a good faith effort to obtain the work that had been referred to him. Accordingly, pursuant to the applicable standard of review, we must affirm the orders below.

NEWMAN, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a Dissenting Opinion in which NIGRO, J., joins.

CAPPY, Justice, dissenting.

I respectfully dissent. In determining that the referee's findings of fact regarding a modification of disability benefits were supported by substantial evidence, the majority concludes that Appellant William Joyce failed to make a good faith effort to follow through on his employer's job referrals. I respectfully disagree with this conclusion; first, because it is based upon pure speculation as the referee made no specific findings of fact on which he rested his determination of a lack of good faith; and second, because the grounds upon which the majority relies fail to establish that Mr. Joyce did not in good faith follow through on his employer's job referrals.

A workmen's compensation referee must support his decision with specific findings to allow for review on appeal. A determination of a lack of good faith is a legal conclusion. Thus, some specific findings must be articulated to support such a determination. *McCray v. W.C.A.B. (Preschool Development Programs, Inc.)*, 167 Pa.Cmwlth. 402, 411, 648 A.2d 348, 352 (1994), *appeal denied*, 540 Pa. 608, 655 A.2d 995 (1995). Here the referee failed to make these necessary specific findings to support his determination.

In August, 1989, after Mr. Joyce was released to light duty work, his employer's vocational counselor notified him of three available positions. The referee found that Mr. Joyce "failed to make a good faith effort to obtain this available work." However, in support of this conclusion, the referee only makes the vague assertion that "By the claimant's own admission he did not due [sic] that which is necessary to secure a job." The referee made no other findings regarding claimant's purported lack of good faith.

The majority first surmises that the referee's blurry reference to an "admission" of a failure to act is from Mr. Joyce's deposition testimony. However, this deposition testimony cannot possibly serve as a basis for a finding of a lack of good faith because it deals with a speculative question regarding a hypothetical accounting position, not one of the three positions referred to Mr. Joyce in August, 1989.

250

The relevant portion of Mr. Joyce's deposition testimony is as follows:

MS. LOMBARD (employer's counsel):

Q. You are currently in school; is that correct?

THE WITNESS (Mr. Joyce): Right.

MS. LOMBARD:

Q. And you are pursuing a degree in accounting: is that correct?

. . .

Q. When you graduate, I think it's scheduled in July of 1990?

A. Chances are slim.

Q. So you are—

A. Right now.

Q. When do you anticipate graduating?

A. I am not sure. It depends upon how they offer and what they offer coursewise for what I have left to take.

Q. How many more credits do you need?

A. After this semester I think I need 15.

. . .

Q. In your efforts to hopefully get a job as an accountant, do you think you will make more than just an application at a job or do you think you will follow up?

MR. SLOAN (claimant's counsel): Objection. You are asking the claimant to speculate about something that he might do at some point in the future that has nothing to do with what he did to check out three job possibilities that were sent to him in August of 1989.

MS. LOMBARD: If he can answer, he can answer it.

THE WITNESS: Could you repeat your question, please?

BY MS. LOMBARD:

Q. When you go out and look for a job as an accountant, do you anticipate doing something more than just filling out an application?

MR. SLOAN: If you know.

THE WITNESS: I am not sure. I have no experience looking for jobs. That's the only way to describe it.

BY MS. LOMBARD: Would you assume that in order to get a job, you would have to do more than just fill out an application?

MR. SLOAN: Same objection.

THE WITNESS: Yes.

Reproduced Record at R.144–45, R.147–48.

Contrary to the majority's contention, this exchange did not occur in connection with an inquiry about the job referrals made by the employer. As can be plainly seen from the above, the testimony dealt with a hypothetical accounting position. The claimant's subjective thoughts on what was required to obtain some hypothetical accounting position, in response to a vague and purely speculative question, is completely irrelevant to a determination of what the claimant did in furtherance of pursuing the three positions referred to him by the employer's vocational counsel, and thus, whether he acted in good faith.[1]

Thus, the referee's reliance upon Mr. Joyce's response to the purely speculative and irrelevant question asked of him cannot serve as a basis for a finding of a lack of good faith. Moreover, the lack of any specific findings by the referee regarding Mr. Joyce's follow-through on the employer's job referrals makes affirmance of the referee's conclusion regarding a lack of good faith untenable.

This case is virtually identical to the Commonwealth Court's decision in *McCray*. In *McCray*, the court addressed the issue of whether the claimant followed through on job referrals in good faith. The referee found the claimant's testimony to be less than completely credible, and, thus, that the claimant did not act in good faith. On appeal, the Commonwealth Court determined that because the referee made no specific

---

1. Even if the question was regarding the 1989 job referrals, Mr. Joyce's response to this imprecise inquiry could have any one of a number of meanings including that he believed that he would have to go to the place of employment and interview with a prospective employer before obtaining a job.

findings on whether the claimant followed through on the job referrals at issue, the court was unable to effectuate its appellate review to determine whether the decision was supported by substantial evidence and correct as a matter of law. Thus, because essential findings of fact were never made by the referee, the court vacated the order of the board and remanded for the making of additional findings on the good faith issue.

The reasoning and conclusion reached in *McCray* is equally applicable to the matter *sub judice*. It is clear to me that the appropriate disposition of this matter is to remand for specific findings regarding the issue of good faith.

The majority, itself obviously unconvinced that the finding regarding Mr. Joyce's "admission" serves as a proper basis for a determination of a lack of good faith, turns to arguments made by the employer at each level of appeal in search of further support for the referee's decision. First, the majority offers the employer's argument that Mr. Joyce waited an unreasonable amount of time after receiving notice of the referrals, three days, to contact the prospective employers; and second, that Mr. Joyce made no effort to speak with Mr. Bob Root, the individual whom he was instructed to contact regarding a dispatcher position at Trap Rock Concrete Company.

Again, I must emphasize that these arguments relied upon by the majority are purely speculative as the referee never embodied either of these employer bases in his decision. The referee never found that waiting a mere three days before contacting an employer was unreasonable and never found that Mr. Joyce failed to exercise good faith in his pursuit of the Trap Rock position.

Moreover, even if the referee, like the majority today, found that waiting three days before contacting a potential employer to be unreasonable, I cannot agree with such a conclusion. Seeking a position within a mere three days constitutes reasonable promptness in seeking employment. *Vinglas v. W.C.A.B. (Bethlehem Mines Corp.),* 109 Pa.Cmwlth. 367, 371–

72, 531 A.2d 105, 108 (1987)(delay of ten working days in responding to job openings held to be not unreasonable).

Likewise, with respect to the Trap Rock position, the claimant clearly made a good faith effort to secure employment. The referral for the Trap Rock position indicated that Mr. Joyce was to contact a Mr. Bob Root. Mr. Joyce testified that he telephoned Trap Rock after receiving the notification of the position and asked to speak to Mr. Root. Mr. Joyce stated that he was told by an individual named "Tony" that Mr. Root was not available, that the position had been filled several weeks earlier, and that no applications were being taken.

While the employer argued that Mr. Joyce made no effort to speak with Mr. Root, or more accurately, made no second attempt to communicate with Mr. Root, and the majority embraces this argument, it is beyond me what more the claimant should have, or could have, done. Should the claimant have insisted on speaking with Mr. Root after being told that he was unavailable? Should he have gone to the work site and demanded to speak with Mr. Root? Should he have submitted a written application even after being told by a company representative that there were no open positions and that applications were not being accepted?

Obviously, the answer to each question is in the negative. This is not a case where the employer's representative was vague or lacking in knowledge about a position, and, thus, a case in which further inquiry by the claimant would have been necessary to fulfill the requirement of making a good faith attempt to secure the position. Rather, Mr. Joyce testified that he received a specific response that his employer contact was unavailable, that the position was filled and that no applications were being accepted. On these facts, I believe that the claimant had done all that can be reasonably required to establish a good faith attempt to secure employment.[2]

2. These decisions are largely based upon credibility. If the referee had rejected the claimant's testimony that he had telephoned Trap Rock as incredible, then affirming the modification would be the correct resolution of this matter. However, no such credibility determination was made in this case; the referee did not reject Mr. Joyce's testimony

Because this case should be remanded to the referee to make specific findings regarding the issue of good faith, as well as for the other reasons stated above, I respectfully dissent.

NIGRO, J., joins this Dissenting Opinion.

regarding the Trap Rock position. Arguably, by relying on "claimant's own admission ...," the referee actually credited Mr. Joyce's testimony. Thus, the referee's failure to make specific findings, and mere speculation by the majority as to what the referee could have relied upon, precludes a conclusion that the substantial evidence supports a finding of a lack of good faith. The majority's efforts to affirm such a finding stretches the confines of our appellate review to the breaking point.