**BERKSHIRE CONSTRUCTION COMPANY and AIG Claims Services, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BONNER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 1997.

Decided Feb. 11, 1998.

Amy Mays Jackson, Lancaster, for petitioners.

Thomas G. Parisi, Reading, for respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

Berkshire Construction Company (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) that reversed a decision of a referee [1] grant-

---

**1.** Referees are now called Workers' Compensation Judges under the new amendments effective August 31, 1993, to Section 401 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 701. *See* Section 14, Act 44, Act of July 2, 1993, P.L. 190. Because this

ing Employer's petition to modify Roxanne Bonner's (Claimant) benefits.

Employer employed Claimant as a manager at the Country Acre Store. Claimant suffered a work-related injury to her right knee when lifting a crate on July 22, 1987. Pursuant to a notice of compensation payable, Claimant received compensation benefits of $210.00 per week based on an average weekly wage of $315.00.

On August 24, 1992, Employer petitioned to modify Claimant's benefits and also petitioned to suspend Claimant's benefits as of April 20, 1992, alleging that Claimant had failed to act in good faith in pursuing jobs for which she was capable of performing and which Employer had made available to her.[2] Employer later amended the date to modify and/or suspend to February 5, 1991. Claimant answered both the modification and suspension petitions and denied Employer's allegations.

The referee held hearings and received deposition testimony. Employer presented the deposition testimony of Christopher C. Lynch, M.D. (Dr. Lynch), board certified in physical medicine and rehabilitation. Dr. Lynch testified that he treated Claimant on December 13, 1990, at which time he conducted a neurological orthopedic examination of Claimant's lower extremities. Dr. Lynch testified that he believed that Claimant was capable of working at a sedentary job, if she avoided standing, or walking for any prolonged period of time. Deposition of Dr. Christopher G. Lynch, July 30, 1993, (Dr. Lynch Deposition) at 13–14; Reproduced Record (R.R.) at 327a–328a. Following the examination, Dr. Lynch approved and reviewed the following jobs for Claimant: in-home telemarketer for Berks Cable, telemarketer for J.C. Ehrlich, telephone sales representative for Sears, cashier at Revco Drugs, part-time customer greeter at Wal–Mart, receptionist at Boscov's, cashier at Hess's Self–Serve, part-time telemarketer at Wallet Works and another telemarketing job at Sears. Dr. Lynch Deposition at 14–15; R.R. at 328a–329a.

Employer also presented the deposition testimony of Harold W. Pearson, M.D. (Dr. Pearson), board certified in orthopedic surgery. Dr. Pearson testified that he examined Claimant in September of 1991. He diagnosed Claimant as having post-lateral release of her knee and trimming of the meniscus. Deposition of Dr. Harold W. Pearson, January 21, 1993, (Dr. Pearson Deposition) at 9; R.R. at 297a. Dr. Pearson concluded that Claimant was capable of returning to work with no restrictions. Dr. Pearson Deposition at 10; R.R. at 298a.

Employer also presented the deposition testimony of Ronald E. Brooks and Joseph McCoy, Jr., private investigators, who testified that they took videotape of Claimant driving a jeep, carrying an infant, and climbing stairs without difficulty.

Most central to this appeal, Employer presented the deposition testimony of Allen Smith (Smith), a vocational rehabilitation specialist with American International Health and Rehabilitation Services. Smith attempted to find a job for Claimant based on Claimant's physical restrictions. Smith testified that he referred Claimant to many jobs which were approved by either Dr. Lynch or Dr. Pearson. Deposition of Allen E. Smith, April 5, 1993, (Smith Deposition) at 9; R.R. at 224a. Smith testified that he referred Claimant to the following jobs which he learned Claimant did not apply for in good faith after speaking with a representative of each employer: part-time telemarketer at Berks Cable Company, part-time telemarketer at J.C. Ehrlich Company, telephone sales representative at Sears, cashier counter clerk at Revco Drug Center, receptionist at Boscov's, part-time sales associate at Wallet Works and again, telephone sales representative at Sears. Besides confirmation from the various employers that Claimant did not apply for these positions or did not apply in good faith, Smith testified that Claimant told him that she did not apply for the following

---

action was commenced prior to the effective date of the amendments, this Court will refer to Brian G. Eader as a referee and not as a Workers' Compensation Judge.

2. Employer also petitioned to review Claimant's medical treatment which is not the subject of this appeal.

positions: Berks Cable, J.C. Ehrlich Company, Sears and Revco. Smith Deposition at 12–30; R.R. at 227a–245a.

Claimant testified and presented the relevant deposition testimony of Gary C. Canner, M.D. (Dr. Canner). Claimant testified that in addition to her knee problem she had developed pain in her neck and some numbness in her hands and arms which she believed were caused by her knee buckling and her falling on some stairs. Notes of Testimony, August 4, 1993, (N.T.) at 11; R.R. at 202. Claimant also testified that she did not apply for any of the jobs referred from Smith because they did not meet the guidelines established by Dr. Canner. N.T. at 8; R.R. at 199. Regarding the Berks Cable job, Claimant testified "I maybe could have done it. It's the idea that I would have been thoroughly miserable doing it." N.T. at 19; R.R. at 210a.

Dr. Canner, board certified in orthopedic surgery, testified that he first treated Claimant on February 3, 1988, and continued to treat her on at least a yearly basis. Dr. Canner testified that Claimant suffered from reflex sympathetic dystrophy. Deposition of Dr. Gary C. Canner, September 23, 1993, (Dr. Canner Deposition) at 6–7; R.R. at 356a–357a. As a result of his examinations, Dr. Canner placed the following work restrictions on Claimant: no kneeling, squatting, climbing, no lifting, sedentary work, twenty hours per week, driving only two miles to work and back, and no exposure to temperature changes. Dr. Canner Deposition at 10–11; R.R. at 360–361a. Dr. Canner testified that he did not approve the jobs referred by Smith for a variety of reasons including too much driving, too much standing, and too long a workday. Dr. Canner Deposition at 12–22; R.R. at 362a–372a.

The referee denied Employer's suspension petition but granted Employer's modification petition and directed Employer to pay partial disability effective February 5, 1991, through August 20, 1991, of $143.33 per week based on the Berks Cable job, pay partial disability effective August 21, 1991, through April 6, 1992, of $136.66 per week based on the Sears job and pay partial disability effective April 7, 1992, of $96.67 per week based on the

Hess job. The referee made the following relevant findings of fact:

25. In following up with Berks Cable Company, Mr. Smith discovered that the claimant did not apply for the position and in speaking with the claimant herself, the claimant told Mr. Smith that she did not apply for the position. Mr. Smith stated that the position would have paid $5.00 an hour for a ten (10) to twenty (20) hour week. He also observed that the drive from the claimant's home to Berks Cable Company was approximately ten (10) to fifteen (15) minutes.

26. The claimant was referred to a job at J.C. Ehrlich as a part-time telemarketer. The job was approved by Dr. Lynch. The claimant was not considered for employment with J.C. Ehrlich based upon her telling the potential employer that she was in constant pain. Mr. Smith spoke to the claimant and she confirmed that she had made that statement to the employer. The position would have paid $4.25 per hour plus commission for twenty (20) to twenty-four (24) hours a week.

27. On August 21, 1991, Mr. Smith referred the claimant to a part-time position with Sears Roebuck as a telephone sales representative. Dr. Lynch had approved the position as being within the claimant's medical restrictions. In following up with the employer, Mr. Smith discovered that the claimant did not apply for the job and in speaking with the claimant herself, Mr. Smith learned from the claimant that she did not apply for the job. The job was available for twenty (20) hours a week at $5.50 an hour.

28. Mr. Smith testified that on November 8, 1991 he referred the claimant to a part-time job at Revco Drug Center as a cashier counter clerk. The position was approved by both Dr. Pearson and Dr. Lynch. Mr. Smith discovered in speaking with the potential employer and the claimant, that the claimant called the employer and advised that she was not able to work. The position would have paid claimant $4.25 per hour for a twenty-five (25) hour work week.

29. The claimant was also referred to a part-time job at Boscov's as a receptionist. The job was approved by both Dr. Lynch and Dr. Pearson. Mr. Smith learned from the employer that the claimant did not apply which he confirmed in a conversation with the claimant. The position would have paid $4.25 per hour for a fifteen to eighteen hour work week.

30. A position at Hess Station as a cashier was referred to the claimant. The position was approved by Dr. Pearson and Dr. Lynch. In following up with the employer, Mr. Smith discovered that the claimant did not apply for the job. The position would have been full-time, from four (4) to twelve (12) at an hourly rate of $4.35 an hour.

. . . .

41. The claimant acknowledged that she did not apply for any of the jobs referred to her by Mr. Smith. The claimant also admitted that she had not applied for any mobs (sic) on her own.

42. The claimant, when questioned about the Berks Cable job which she would have been able to perform out of her home, acknowledged that she might have been able to do the job but that she would have been miserable.

. . . .

44. This Judge finds the testimony of the claimant that she is unable to work to be not credible and not worthy of belief specifically based upon the testimony of both Dr. Lynch and Dr. Pearson who opined that the claimant is capable of working and is capable of driving more than two (2) miles at a time. Upon reviewing the surveillance videotape conducted on the claimant, this Judge finds that the claimant's current complaints are inconsistent with her activities shown on the surveillance videotape.

45. This Judge finds the testimony of Dr. Pearson to be competent, credible and worthy of belief specifically as to his opinion that the claimant was capable of being *employed* and was capable of performing the job duties set forth in the job description which he approved.

46. This Judge finds the testimony of Dr. Lynch to be competent, credible and worthy of belief specifically as to his opinion that the claimant was capable of performing the jobs set forth in the job referrals which he approved.

. . . .

48. This Judge finds the testimony of Mr. Allen Smith to be competent, credible and worthy of belief specifically as to his testimony that he made work available to the claimant within her medical restrictions and that the claimant did not follow-up on the positions in good faith.

. . . .

50. This Judge finds the testimony of Dr. Canner to be not credible and not worthy of belief specifically based on the fact that Dr. Canner did not review the videotape of surveillance performed on the claimant and acknowledged that in disapproving the jobs he was relying only on the claimant's subjective complaints and not on a physical examination of the claimant. This Judge finds also that Dr. Canner's testimony is not credible and not worthy of belief based on the fact that Dr. Canner acknowledged that he never told Mr. Smith that the claimant was incapable of driving.

Referee's Opinion, Findings of Fact 25–30, 41–42, 44–46, 48 and 50 at 7–11; R.R. at 33a–37a.

Claimant appealed to the Board contending that the referee erred in granting the modification petition by admitting hearsay testimony. Specifically, Claimant contended that Smith's testimony concerning his conversations with potential employers concerning whether Claimant applied for jobs and her conduct during job interviews as well as documents submitted from the various potential employers were hearsay. The Board agreed with Claimant that Smith's testimony was inadmissible hearsay. As a result the referee's finding that Smith was credible was unsupported by substantial, competent evidence. Accordingly, the Board reversed the referee and denied Employer's modification petition. Employer appeals.

On appeal[3] Employer contends that the Board erred in reversing the referee's decision granting Employer's modification petition on the basis that the referee based his decision on improperly admitted hearsay evidence when the Claimant admitted that she did not apply for any of the positions referred to her.

■ The employer bears the burden of proof to modify a claimant's benefits based on a claimant's alleged ability to return to work. In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), our Pennsylvania Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to modify compensation payments:

1. The employer must produce medical evidence of a change in the employee's condition.

2. The employer must produce evidence of a referral or referrals to a then open job (or jobs), which fits the occupational category which the claimant has been given medical clearance e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

Here, the referee accepted as credible the medical opinions of Dr. Pearson and Dr. Lynch that Claimant was capable of returning to work in a modified capacity. As to the second prong of *Kachinski*, Smith testified that he met with Claimant and obtained Claimant's medical restrictions. He then interviewed all the prospective employers and obtained information including visiting the prospective employers before determining what jobs to refer to Claimant.[4] Claimant contends that Smith's testimony concerning available jobs was inadmissible hearsay. We disagree.

■ In a similar case our Pennsylvania Supreme Court recently held in *Joyce v. Workmen's Compensation Appeal Board (Ogden/Allied Maintenance and Travelers Insurance Company,* —— Pa. ——, 705 A.2d 417 (1997)) that a vocational counselor's testimony concerning the availability of jobs she identified in a letter to the claimant, William Joyce (Joyce), was admissible even to the extent it was based on hearsay because it was the type of information reasonably relied on by an expert in the field forming an opinion. Here, Smith actually possessed first hand knowledge of the positions he referred. His testimony was admissible. Even assuming *arguendo* his testimony concerning the availability of jobs was based on hearsay, it would be admissible because Smith is a vocational rehabilitation specialist and testified as an expert.

■ Turning to the third prong of *Kachinski*, the Board determined that Employer did not establish that Claimant acted in bad faith because Smith's testimony constituted hearsay. Smith's testimony, if he only reported what potential employers told him, was hearsay and did not establish a lack of good faith on the part of Claimant. However, Smith testified that after speaking with some of the employers he then checked with Claimant to see if she in fact failed to apply

---

3. Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa. Cmwlth. 15, 589 A.2d 291 (1991).

4. Employer's attorney, Patrick T. Cusick, questioned Smith concerning the procedure he followed in referring jobs to Claimant:

Q: The positions contained in the job summary sheets, are there any positions which you reviewed—strike that. Are there any positions that were referred to the Claimant which you did not personally review and develop job descriptions based upon your personal observations?

A: I interviewed all the prospective employers and obtained information, on-site job analysis or review of job duties with a specific employer.

Q: Is that standard of interviewing the employer and going to the job site, is that the type of information that you as a vocational expert customarily rely upon in referring positions to injured workers?

A: That is correct.

Smith Deposition at 13–14, R.R. at 228a –229a.

for the jobs. With respect to the Berks Cable, Sears, J.D. Ehrlich, and Boscov positions, Claimant confirmed in conversation with Smith that she did not apply for the job or, in the case of J.D. Ehrlich did not apply in good faith. As Employer points out in its brief, such statements by Claimant reported by Smith do not constitute hearsay, and, alternatively, qualify as an exception to hearsay as an admission against pecuniary interest. *See Commonwealth v. Bracero,* 325 Pa.Super. 494, 473 A.2d 176, 180, *affirmed,* 515 Pa. 355, 528 A.2d 936 (1987). Furthermore, the referee found that Claimant testified that she did not apply for any of the referred jobs and that she could have done the Berks Cable at home telemarketing position but it would have made her "miserable." N.T. at 19; R.R. at 210a. The Employer satisfied the third prong of *Kachinski.*

In *Joyce,* the vocational counselor testified that she learned that Joyce had not contacted the appropriate person regarding a position as a dispatcher at a concrete company from Bob Root (Root), the contact person. Although the Court held that the vocational counselor's testimony as to what Root said constituted inadmissible hearsay, the Court determined that there was substantial evidence to determine that Joyce had not acted in good faith when seeking the position because Joyce admitted he made only one telephone attempt to reach Root and was allegedly informed that no applications were being accepted. Joyce made no follow-up. *Joyce,* —— Pa. at —— – ——, 705 A.2d at 418–19.

Therefore, the Board erred in ruling that the Employer failed to meet its burden. Accordingly, we reverse and reinstate the decision of the referee.

### ORDER

AND NOW, this 11th day of February, 1998, the order of the Workers' Compensation Appeal Board at No. A95–1890 and dated May 30, 1997 is reversed and the decision of the referee is reinstated.