**Kuehn v. Morgan**

510

C.P. of Lehigh County, no. 2001-C-399.

*Nicholas R. Sabatine III,* for plaintiffs.
*Kevin C. Reid,* for defendant.

GARDNER, *J.,* June 16, 2002—This matter is before the court on defendant's motion in limine, filed Novem-

ber 14, 2001. Plaintiffs' answer to defendant's motion in limine was filed December 14, 2001. Oral argument was held before the undersigned on March 22, 2002. Upon consideration of the arguments of counsel and the briefs of the parties, and for the reasons expressed in this opinion, we deny defendant's motion in limine, and we grant plaintiffs leave to file a motion for extension of time in which to obtain expert witnesses.[1]

This is an action for personal injuries arising from a motor vehicle accident which occurred on September 17, 2000 at approximately ten o'clock p.m. on MacArthur Road in South Whitehall Township, Lehigh County, Pennsylvania. Plaintiffs contend that plaintiff Bruce L. Kuehn Sr. was driving his 1992 Toyoto pickup truck south on MacArthur Road with his wife, plaintiff Stephanie Kuehn, in the right front passenger seat of the truck. Mr. Kuehn stopped at a traffic light near the entrance to the Lehigh Valley Mall. While waiting for the traffic light to turn green, the plaintiffs' truck was struck from behind by a vehicle operated by defendant David S. Morgan.

Each plaintiff alleges receiving "various injuries as a result of the collision including, but not limited to chronic low back pain, neck pain, cervical sprain and lumbar sprain, some of which or all may be permanent."[2] Each plaintiff seeks compensatory damages for his or her in-

---

1. Our ruling is without prejudice for defendant to file an amended motion in limine if we deny plaintiffs' request for an expert; or if we grant it, and plaintiffs fail to obtain an expert.

2. See complaint filed June 4, 2001, paragraphs 12 (Bruce L. Kuehn Sr.) and 22 (Stephanie L. Kuehn).

juries. Each seeks damages for the loss of consortium of the other spouse.[3] Each also seeks punitive damages.[4]

At oral argument on his motion in limine, defense counsel conceded that defendant's negligence caused the accident. More specifically, defendant conceded that he owed a legal duty of due care towards plaintiffs, and that he breached that duty.[5]

In their complaint,[6] plaintiffs allege that defendant violated the rules of the road and the laws of the Commonwealth of Pennsylvania, including following too closely,[7] driving vehicle at safe speed,[8] careless driving,[9] reckless driving,[10] and driving under influence of alcohol or controlled substance.[11] In defendant's responses to plaintiffs' interrogatories, defendant stated that he was cited for driving under influence of alcohol and careless driving.[12]

Defendant also stated in his interrogatory responses that he was not given a field sobriety test,[13] but that he had consumed a six-pack of beer in a 24-hour period

---

3. See complaint, Count II (husband plaintiff) and Count IV (wife plaintiff).

4. See complaint, paragraphs 13 (husband plaintiff) and 23 (wife plaintiff).

5. Notes of testimony of argument held on March 22, 2002, p. 3.

6. See complaint, paragraphs 6(f) and 16.

7. 75 Pa.C.S. §3310.

8. 75 Pa.C.S. §3361.

9. 75 Pa.C.S. §3714.

10. 75 Pa.C.S. §3736.

11. 75 Pa.C.S. §3731.

12. Neither plaintiffs' interrogatories, nor defendant's responses, were filed of record. However, at oral argument, both counsel referred to the content of the interrogatories and responses. N.T. 24.

13. N.T. 24.

preceding the accident.[14] Defendant stated that the exact time of the beer consumption was unknown to him.[15]

Defendant's responses indicated that he was administered a breath test, and that the results indicated that he had a blood alcohol content of 0.31 percent volume of alcohol by weight in the blood.[16] The record is silent concerning when, where, or by whom, the breath test was administered or the results analyzed.

According to defendant's interrogatory responses, defendant's 10-year-old daughter was riding with him at the time of the accident.[17] However, the record is silent concerning whether there were any other witnesses, other details of the accident, and other details of defendant's alcohol consumption or condition.

In his motion in limine, defendant seeks to preclude plaintiffs from producing any evidence at trial of defendant's alcohol consumption, intoxication, blood alcohol level, or anything related to alcohol.[18] In support of his request, defendant contends that any evidence of alcohol consumption or intoxication is irrelevant because he has conceded negligence.[19] Plaintiffs apparently agree with defendant to the extent that evidence of defendant's consumption of alcohol is not relevant or admissible to prove defendant's negligence because defendant has conceded negligence.[20] We agree as well.[21]

---

14. N.T. 18, 24.
15. N.T. 24.
16. N.T. 17, 23-24.
17. N.T. 17.
18. N.T. 4.
19. N.T. 4, 13.
20. See N.T. 22, 35.
21. N.T. 11-12.

Nevertheless, plaintiffs contend that proof of defendant's consumption of alcohol, intoxication and blood alcohol level is relevant on the issue of punitive damages to establish that defendant was acting in a grossly negligent fashion and with wanton and reckless disregard for the safety of plaintiffs when defendant operated his vehicle in a highly inebriated state. Regarding plaintiffs' claims for punitive damages, defendant contends that, because he conceded negligence, his consumption of alcohol has no probative value on damages or punitive damages, as well as on negligence.[22]

Defendant argues, in the alternative, that even if his alcohol consumption has some relevance on the issue of punitive damages, it should nevertheless be disallowed because under the circumstances of this case the prejudicial effect of the proposed evidence outweighs any relevance it might have. In this regard defendant asserts that in weighing the admissibility of intoxication on the question of punitive damages, one has to look both at the surrounding circumstances and the nature of the harm which occurred.[23]

Defendant contends that evidence of alcohol consumption is "inherently prejudicial."[24] The circumstances surrounding the accident, from defendant's perspective, include light damage to plaintiffs' vehicle, only soft tissue injuries, and treatment by a chiropractor for less than a year. In this context, defendant maintains, the relevance of the evidence of alcohol use regarding punitive damages is outweighed by its inherently prejudicial effect.

22. N.T. 6.
23. N.T. 10.
24. N.T. 6, 10.

In Pennsylvania it is a criminal offense to drive a vehicle while the amount of alcohol by weight in the operator's blood is 0.10 percent or greater.[25] Accordingly, plaintiffs maintain that not only is defendant's 0.31 percent blood alcohol reading relevant on the issue of punitive damages, but that its relevance outweighs any prejudicial effect which the evidence might have.

The long-established rule in Pennsylvania accident cases regarding the admissibility of intoxication evidence is that such evidence of intoxication must reasonably establish a degree of intoxication which proves unfitness to drive or to walk. If it is capable of establishing such unfitness to drive, the intoxication evidence is relevant. *Morreale v. Prince,* 436 Pa. 51, 258 A.2d 508 (1969); *Locke v. Claypool,* 426 Pa. Super. 528, 532, 627 A.2d 801, 803 (1993). However, in *Whyte v. Robinson,* 421 Pa. Super. 33, 617 A.2d 380 (1992) evidence of an odor of alcohol on the breath and a blood alcohol content of 0.144 percent alone was held insufficient to establish unfitness to drive.

Evidence of a driver's blood alcohol content alone is insufficient to prove intoxication to a degree that renders him unfit to drive or walk in the street. *Billow v. Farmers Trust Co.,* 438 Pa. 514, 266 A.2d 92 (1970). Notably, the criminal presumption of intoxication at a blood alcohol level of 0.10 percent does not apply in civil cases. *Suskey v. Loyal Order of Moose Lodge No. 86,* 325 Pa. Super. 94, 472 A.2d 663 (1984).

If the evidence of intoxication is sufficient to establish unfitness to drive, the evidence is relevant. Nevertheless, to determine whether it is admissible, the court

---

25. 75 Pa.C.S. §3731(a)(4)(i).

must apply the Pa.R.E. 403 balancing test, discussed below, to weigh its probative value against the danger of unfair prejudice.

As noted above, the parties agree that evidence of defendant's intoxication is not relevant to establish that defendant was negligent because defendant conceded negligence. They disagree, however, concerning whether evidence of intoxication nevertheless is admissible to prove punitive damages. Although the parties contend that this is an issue of first impression in Pennsylvania,[26] our research has revealed a case on point.

*Focht v. Rabada*, 217 Pa. Super. 35, 268 A.2d 157 (1970), is similar to the within case in that defendant conceded negligence. In *Focht* the Superior Court of Pennsylvania stated:

"[W]e believe that driving while under the influence of intoxicating liquor with its very great potential for harm and serious injury may under certain circumstances be deemed 'outrageous conduct' and 'a reckless indifference to the interests of others' sufficient to allow the imposition of punitive damages. . . .

"Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility of death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area. Thus, we have no hesitancy in concluding that an intentional assault with fists may, in certain instances, constitute action less out-

---

26. N.T. 39.

rageous than attempting to drive while under the influence of intoxicating liquor which constitutes a threat to the life and safety of others. In certain factual situations the risk to others by the drunken driver may be so obvious and the probability that harm will follow so great that outrageous conduct may be established without reference to motive or intent . . . . We conclude, therefore, that, under the appropriate circumstances, evidence of driving while under the influence of intoxicating liquors may constitute a sufficient ground for allowing punitive damages." *Focht, supra* at 40, 41-42, 268 A.2d at 60, 61. (footnote omitted)

Accordingly, we reject defendant's contention that evidence of intoxication is not relevant to the issue of punitive damages. For evidence of consumption of alcohol to be admissible on the question of punitive damages, however, the same rules, quoted above, concerning the admissibility of drinking on the question of negligence, apply. That is, such evidence of intoxication must reasonably establish a degree of intoxication which proves unfitness to drive, the evidence of intoxication must be probative on the issue of punitive damages, and the probative value of the evidence must outweigh its prejudicial effect.

In appropriate cases a plaintiff is entitled to recover punitive or exemplary damages in addition to compensatory damages. While compensatory damages are those damages which compensate a party for actual damage suffered and proved, punitive damages are awarded for no other purpose than to punish the wrongdoer for his outrageous conduct. Restatement (Second) of Torts §908(1) (1977).

Specifically, Pennsylvania courts have adopted the Restatement (Second) of Torts §908 on punitive damages. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984); *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (1963); *Dean Witter Reynolds Inc. v. Genteel*, 346 Pa. Super. 336, 499 A.2d 637 (1985), *alloc. denied*, 514 Pa. 635, 523 A.2d 346 (1987). Section 908(2) of the Restatement provides:

"Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant."

The court has defined a reckless indifference in *Smith v. Brown*, 283 Pa. Super. 116, 423 A.2d 743 (1980):

" 'Reckless indifference to the interests of others,' or as it is sometimes referred to, 'wanton misconduct,' means that 'the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.' " *Smith, supra* at 120, 423 A.2d at 745.

In other words, there are three elements of reckless indifference: (1) the actor must have intentionally done an act of unreasonable character; (2) he must have disregarded a risk known to him or so obvious that he must have been aware of it; and (3) the risk must have been so great as to make it highly probable that harm would follow.

Plaintiffs assert that in assessing whether punitive damages are applicable here, the jury is entitled to determine whether defendant was intoxicated to the point that his intoxication formed the basis of a reckless indifference to the rights of plaintiffs. Plaintiffs contend that defendant's responses to plaintiffs' interrogatories indicate that defendant was convicted of driving under the influence of alcohol, that defendant had a blood alcohol level of 0.31 percent, that defendant did not remember taking a field sobriety test, that defendant had consumed a "six-pack" of beer in the 24 hours preceding the accident, and that the defendant drove in this condition with his 10-year-old daughter in the car.

Plaintiffs also indicated that they would provide the testimony of the arresting officers to describe the condition, and extent of intoxication, of defendant at the time of the accident.

If plaintiffs can establish the foregoing at trial and can establish that a 0.31 percent blood alcohol reading renders defendant unfit to drive, it would constitute circumstantial evidence that defendant had intentionally committed an act of unreasonable character (driving while highly intoxicated), had disregarded a risk (of harming people such as plaintiffs) so obvious that he must have been aware of it, and the risk must have been so great as to make it highly probable that harm would follow.

The foregoing would establish the relevance and probative value of the evidence of intoxication on the punitive damages issue, under the cases cited. Then the court must perform the "balancing test" to determine whether the proffered evidence has any prejudicial effect, and if so, whether the probative value is outweighed by its prejudicial effect.

The precise test is provided by Pa.R.E. 403 which provides, "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As stated in the comment to Rule 403, " 'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially."

This balancing test is more appropriately performed by the trial judge in the context of the trial, than through a pretrial motion in limine. However, based on plaintiffs' offer of proof, we reject the suggestion, implicit in defendant's argument, that as a matter of law, plaintiffs will be unable to establish punitive damages.

As noted above, the Restatement (Second) of Torts §908(2) provides that in "assessing punitive damages, the trier of fact can properly consider the character of the defendant's act [and] the nature and extent of the harm to the plaintiff . . . ." Accordingly, defendant is correct in asserting that in weighing the admissibility of intoxication on the question of punitive damages, one has to look both at the surrounding circumstances and the nature of the harm that occurred. This evaluation, also, is more appropriately performed at the time of trial.

Finally, defendant contends, in the alternative, that even if the relevance of the evidence outweighs its prejudicial effect, plaintiffs should be precluded from producing any evidence of defendant's 0.31 percent blood alcohol content because they have produced no expert testimony to explain the relevance of the blood alcohol

level. Defendant asserts that in a civil case, unlike a criminal case, there is no presumption of an unfitness to drive with a blood alcohol content above 0.10 percent. *Suskey v. Loyal Order of Moose Lodge No. 86,* 325 Pa. Super. 94, 472 A.2d 663 (1984). Defendant asserts plaintiffs need expert testimony to explain the effect of a 0.31 percent blood alcohol level to a jury.

Plaintiffs, on the other hand, contend that they do not need expert testimony to establish that defendant had a blood alcohol level of 0.31 percent. Plaintiffs argue that the trial judge should advise the jury that under Pennsylvania law a person with a blood alcohol level of 0.10 percent is legally incapable of safe driving, and that a reading of 0.31 percent is three times that level. Plaintiffs assert that, on that basis alone, a jury could reasonably conclude, without the support of expert testimony, that driving with a 0.31 percent blood alcohol level constitutes reckless indifference. For the following reasons, we disagree.

As noted above, plaintiffs are not permitted to present evidence of a presumption of an unfitness to drive with a blood alcohol content above 0.10 percent because that is not permitted in a civil case. *Suskey, supra.* The general rule is that expert testimony is required where the jury is confronted with issues which require scientific or specialized knowledge to understand.

In *Dion v. Graduate Hospital of the University of Pennsylvania,* 360 Pa. Super. 416, 425, 520 A.2d 876, 881 (1987), the Superior Court of Pennsylvania articulated the reasons for the general rule as follows:

"Frequently, the jury, or the court trying a case without a jury, is confronted with issues which require scien-

tific or specialized knowledge or experience in order to be properly understood. Certain questions cannot be determined intelligently merely from the deductions made and inferences drawn from practical experience and common sense. On such issues, the testimony of one possessing special knowledge or skill is required in order to arrive at an intelligent conclusion. 31 Am.Jur.2d Expert and Opinion Evidence §16 (1967). In these matters, where laymen have no knowledge or training, the court and jury are dependent on the explanations and opinions of experts.

"In a logical and fundamental sense, a verdict is worth only as much as the evidence upon which it is based. In a complex case, a jury, in order to reach an intelligent conclusion, is dependent on expert testimony. If the jury is enlightened, it will reach the right verdict. Unaided by the explanations and opinions of those with specialized knowledge or skill, the ultimate conclusion might just as well be based on evidence presented in a language unfamiliar to the jury. Unless the jury is comprised of experts in the field, the verdict is based on mere conjecture. Such a verdict is worthless." *Dion, supra* at 425, 520 A.2d at 881.

However, there is an exception to the general rule requiring expert testimony. Plaintiff is not required to produce an expert witness in cases where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of common knowledge and the ordinary experience and comprehension of the average lay juror, or the doctrine of res ipsa loquitur is applicable. *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981); *Chandler v. Cook,* 438 Pa. 447, 265 A.2d 794 (1970).

There are a number of contentions being advanced by plaintiffs which require scientific or specialized knowledge to understand, and thus are beyond the knowledge of a layperson. These include what a 0.31 percent blood alcohol level means; the amount of alcohol a person would have to consume to raise a blood alcohol level of 0.31 percent; how, and at what rate, alcohol is absorbed into the bloodstream; and the effect that amount of alcohol has on a person's coordination and judgment.

"Where the factual situation is such that normally laypersons (jurors) would not have the special or expert knowledge needed to comprehend and understand the problem, then expert testimony is appropriate." *Drew v. Laber,* 477 Pa. 297, 302, 383 A.2d 941, 944 (1978). At the oral argument on defendant's motion in limine on March 22, 2002, the undersigned placed on the record various reasons why expert testimony is required to establish plaintiffs' contentions, and why the evidence is beyond the knowledge of a layperson.[27] The Notes of Testimony of that analysis are attached to this opinion as Appendix A, and [are not] incorporated here.

Accordingly, we agree with defendant that plaintiffs cannot introduce evidence of intoxication to establish entitlement to punitive damages in the absence of expert opinion. At oral argument, plaintiffs' counsel made a motion to extend the time for production of expert reports in the event that we conclude that expert testimony is necessary. Because plaintiffs' motion was oral, defense counsel did not have an opportunity to formally respond.

---

27. N.T. 29-33.

Therefore, we will give plaintiffs until July 12, 2002 to file a formal written motion for extension of the deadline to produce expert reports, accompanied by a brief. Defendant shall have 20 days from receipt of plaintiffs' motion and brief in which to file an answer and response brief. In the event plaintiffs fail to file their motion by July 12, 2002, we will entertain an amended motion in limine on behalf of defendant to preclude evidence of intoxication.[28]

For all the foregoing reasons, we deny defendant's motion in limine.[29]

---

28. Defendant's motion in limine was filed November 14, 2001, prior to the expiration of the deadlines for the completion of discovery and the submission of expert reports. Moreover, at oral argument, plaintiffs' counsel stated that plaintiffs did not receive answers to their interrogatories until February 6, 2002. (N.T. 33.) Our discovery order dated July 30, 2001, set December 3, 2001, as the deadline for both the completion of discovery and for the plaintiffs' submission of expert reports. We conclude that plaintiffs may not have been in possession of all of the information about defendant's level of intoxication necessary to determine whether expert testimony was required, notwithstanding counsel's argument that it was not necessary. At the time defendant's motion in limine was filed, plaintiffs still could have produced a timely expert report.

We reserve decision on plaintiffs' motion to extend the deadline for submission of expert reports because we want to give plaintiffs the opportunity to reduce the motion to writing, supported by a brief, and for defendant to have the opportunity to formally respond in like kind before we decide this issue.

29. In the brief in support of defendant's motion in limine filed November 14, 2001 and at oral argument, defense counsel argued that alcohol has no effect until absorbed into the bloodstream. Counsel stated that this occurs 30 to 90 minutes after consumption of alcohol. Defense counsel cited *Schwarzbach v. Dunn,* 252 Pa. Super. 454, 462, 381 A.2d 1295, 1298 (1977) for the proposition that any blood test evidence that "relates back" to a time earlier than the time the test was performed is viewed with skepticism as entirely too speculative.

## ORDER

Now, June 16, 2002, upon consideration of defendant's motion in limine, which motion was filed November 14, 2002; upon consideration of plaintiffs' answer to

---

For the guidance of counsel and the trial judge, we note that the language relied upon by defendant was dictum. Moreover, *Schwarzbach* was a plurality opinion. Only three of the seven judges of the Superior Court of Pennsylvania who participated in that decision (President Judge Watkins, Judge Jacobs, and Judge van der Voort) adopted that proposition in the Watkins' opinion. Judge Hoffman dissented. Judge Cercone concurred in the result. Judge Price wrote a concurring opinion, joined by Judge Spaeth, in which they disagreed with the blood alcohol discussion in the Watkins' opinion.

An opinion which does not represent the views of a majority of the court is not precedent. *Commonwealth v. Davenport,* 462 Pa. 543, 559 n.3, 342 A.2d 67, 75 n.3 (1975). Plurality opinions do not have precedential authority. *Boyer v. Smith,* 345 Pa. Super. 66, 71, 497 A.2d 646, 648 (1985). A plurality opinion is an opinion of an appellate court in which more judges join than in any concurring opinion (though not a majority of the court). Black's Law Dictionary 1039 (5th ed. 1979); Ballentine's Law Dictionary 956 (3d ed. 1969).

Either a majority opinion, a plurality opinion, or an opinion by an equally divided court will affirm the judgment of the lower court. But the opinion of affirmance by an equally divided court, or by a plurality, has no precedential value. *Commonwealth v. Covil,* 474 Pa. 375, 380-81, 378 A.2d 841, 844 (1977).

The vote of a judge concurring in the result is counted for purposes of affirming the judgment of the lower court. However, that vote does not contribute to a majority of the court participating necessary to create precedent. *Commonwealth v. Glover,* 497 Pa. 433, 435-36, 441 A.2d 1216, 1217 (1982).

Similarly, a concurring opinion expressing different reasons for the outcome is counted for purposes of affirming the judgment of the lower court. However, it does not count with the majority for creating precedent (unless the concurring opinion is being cited for a point or line of reasoning with which a majority of the court agrees). See *Commonwealth v. Bracero,* 325 Pa. Super. 494, 500 n.3, 473 A.2d 176, 179 n.3 (1984).

defendant's motion in limine filed December 14, 2001; upon consideration of the briefs of the parties; after oral argument held on March 22, 2002; and for the reasons expressed in the accompanying opinion, it is ordered that defendant's motion in limine is denied without prejudice.

It is further ordered that on or before July 12, 2002, plaintiffs may file a motion for extension of the deadline to submit expert reports, accompanied by a brief.

It is further ordered that defendant shall have 20 days from receipt of plaintiffs' motion and brief to file an answer and response brief.

It is further ordered that in the event plaintiffs shall fail to file a motion for extension and brief by July 12, 2002, defendant shall have until August 1, 2002, to file an amended motion in limine to preclude evidence of intoxication.